**Joseph GLOTZBACH, CPA, as receiver for Midwest Material Services, Inc., Appellant–Petitioner,**

v.

**Jacqueline L. FROMAN, as Personal Representative of the Estate of Drew Alan Froman, Deceased, Appellee–Respondent.**

No. 45A03–0307–CV–264.

Court of Appeals of Indiana.

May 11, 2005.

Rehearing Denied July 20, 2005.

Thomas H. Bryan, Fine & Hatfield, Evansville, IN, Attorney for Appellant.

Terrance L. Smith, Smith & DeBonis, Highland, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Joseph Glotzbach, as receiver for Midwest Material Services, Inc. ("Midwest"), brings this interlocutory appeal from the Lake Superior Court's denial of summary judgment on Jacqueline Froman's ("Fro-

man") complaint for spoliation of evidence and punitive damages. Concluding that the trial court properly denied summary judgment, we affirm.

### Facts and Procedural History

The facts most favorable to Froman as the non-moving party indicate that Midwest, an Indiana corporation, provided environmental waste services for its customers, including the handling and transfer of environmentally hazardous materials. Midwest had a long-standing relationship with National Industrial Maintenance, Inc. ("National") in which National would furnish workers to serve under Midwest's supervision.

In April 2000, Midwest contracted with Ashland Chemical Inc. ("Ashland") to transfer brake part cleaner from a large holding tank into 55–gallon drums and then clean the tank. Midwest contacted National, who assigned its employee Drew Froman ("Drew") to the job. On May 5, 2000, Drew accompanied William Darling ("Darling"), one of Midwest's owners, to the Ashland premises in South Bend. The two began emptying the highly flammable liquid from the holding tank by using a 110–volt electric pump and hoses that Darling brought to the site. Darling handled a hose from the pump to fill the 55–gallon drums, while Drew knelt outside the holding tank and held both the pump and the hose leading into the tank.

As the two were filling the eighth and final drum, Darling noticed some air bubbles in the hose line and directed Drew to shut off the pump. Drew switched the pump off and set it down. A large explosion occurred and Drew was engulfed by flames. Darling and Ashland employees smothered the fire and removed Drew's clothing. Darling and Drew were taken by ambulance to medical facilities in South Bend. Drew was later transferred to a Chicago hospital, where he died the following morning as a result of his injuries. Darling suffered minor burns to his hands and was released the same day.

After his release, Darling returned to the Ashland site, where the South Bend Police and Fire Departments were investigating the cause of the explosion. Darling was interviewed by both the South Bend Police and Fire Departments at the site. Darling informed the South Bend Police that he did not know the brand of the pump, but that it was "explosion-proof." At Ashland's request, Darling removed Midwest's equipment at the scene, along with debris from the explosion, including the 110–volt electric pump and Drew's clothing and wallet.

On May 8, 2000, three days after the explosion, Indiana Occupational Safety and Health Administration ("IOSHA") Compliance Officer Debbie Rauen ("Rauen") contacted Darling and asked if he had any of the equipment or debris from the explosion in his possession. Darling confirmed that he did, and Rauen advised him not to dispose of any of the items. Yet four days later, on May 12, 2000, when South Bend Fire Department officials and Rauen interviewed Darling, he informed the interviewers that everything he had collected was now in the Mokena, Illinois landfill.

On December 12, 2000, Froman, as personal representative of the estate of Drew Froman, filed a complaint against Midwest in Lake Superior Court. Count I of Froman's complaint against Midwest alleged wrongful death. Count II of Froman's complaint was against "John Doe Company" as designer, manufacturer, and distributor of the pump. Midwest moved to dismiss the complaint against it for lack of subject matter jurisdiction under Trial Rule 12(B)(1), asserting that the action was precluded by the Indiana Worker's Compensation Act. Froman then moved for leave to file an amended complaint,

which the trial court granted. In her amended complaint, Froman added counts against Midwest for negligent and intentional spoliation of evidence and punitive damages.

Midwest filed a motion to dismiss the amended complaint under Trial Rules 12(B)(1) and 12(B)(6), and in support of its motion, filed an affidavit from Darling. The trial court conducted a hearing on the matter on February 5, 2003. At that hearing, Froman conceded that the Worker's Compensation Act precluded her wrongful death claim against Midwest. On April 22, 2003, the trial court dismissed the wrongful death complaint but denied Midwest's motion to dismiss the spoliation of evidence and punitive damages counts. At the request of Midwest, the trial court certified its order for interlocutory appeal on June 18, 2003. This court accepted jurisdiction of the interlocutory appeal pursuant to Appellate Rule 14(B) on August 14, 2003.

Midwest filed its Appellant's Brief on November 7, 2003, and Froman filed her Appellee's Brief on December 8, 2003. On December 9, 2003, Midwest filed a motion for stay of proceedings because Midwest's insurer was in rehabilitation proceedings in North Carolina. This court placed a stay on further proceedings and directed Midwest to file a status report every sixty days. On January 5, 2005, at Midwest's request, this court lifted the stay and we now resume consideration of this appeal.

### Standard of Review

Midwest's motion to dismiss included Darling's affidavit, and Froman's response to the motion to dismiss included facts outside the pleadings. Where the trial court, in ruling on a motion to dismiss, considered matters outside the pleadings, as it did here, the motion should be treated by the trial court and will be reviewed by the Court of Appeals as a motion for summary judgment. *See* Ind. Trial Rule 12(B); *see also Azhar v. Town of Fishers,* 744 N.E.2d 947, 950 (Ind.Ct.App.2001).

Our standard of review of a summary judgment motion is the same standard used in the trial court:

Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. The review of a summary judgment motion is limited to those materials designated to the trial court. We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court.

*Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001) (citations omitted).

### Discussion and Decision

Spoliation consists of " '[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible.' " *Cahoon v. Cummings,* 734 N.E.2d 535, 545 (Ind.2000) (quoting Black's Law Dictionary 1409 (7th ed. 1999)). Our supreme court recently concluded that Indiana common law does not recognize an additional independent claim against a first-party tortfeasor for either intentional or negligent spoliation of evidence. *Gribben v. Wal–Mart Stores, Inc.,* 824 N.E.2d 349, 355 (Ind. 2005). However, Indiana has recognized the right of a party to pursue an action for spoliation of evidence against a third party in limited circumstances. *See Thompson v. Owensby,* 704 N.E.2d 134 (Ind.Ct.App. 1998), *trans. denied.* As our supreme court noted in *Gribben,* "[i]t may well be

that the fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation and thus not subject to existing remedies and deterrence." *Gribben,* 824 N.E.2d at 355.

In her amended complaint, Froman alleged:

> That the defendant Midwest Material Services by and through its owner and principal, discarded and destroyed the [electric pump] evidence with the explicit intent of depriving the investigative agencies and others . . . , including [Froman], from proving that Midwest Material Services, Inc., William Darling, and John Doe Corporation, were at fault both in a civil lawsuit for the injuries and death of Drew Alan Froman.

Appellant's App. p. 68.

■ Thus, Froman's complaint asserts claims for both first-party spoliation of evidence (for the harm to her wrongful death claim against Midwest) and third-party spoliation of evidence (for the harm to her claim against "John Doe Company"). As noted above, Indiana does not recognize an independent tort claim for first-party spoliation of evidence, and Froman's wrongful death claim against Midwest was dismissed. Therefore, we consider only Froman's complaint for third-party spoliation of evidence against Midwest as it pertains to her claim against "John Doe Company" as the designer, manufacturer, and seller of the electric pump.

## I. Duty

■ Negligent or intentional spoliation of evidence is actionable as a tort only if the party alleged to have lost or destroyed the evidence owed a duty to the person bringing the spoliation claim to have preserved it. *See Murphy v. Target Prods.,* 580 N.E.2d 687, 690 (Ind.Ct.App. 1991); *J.S. Sweet Co., Inc. v. Sika Chem. Corp.,* 400 F.3d 1028, 1032 (7th Cir.2005). Whether the defendant must conform his conduct to a certain standard for the plaintiff's benefit is a question of law for the court to decide. *Estate of Heck v. Stoffer,* 786 N.E.2d 265, 268 (Ind.2003). Courts will generally find a duty where reasonable persons would recognize and agree that it exists. *Id.* (citing *Gariup Const. Co. v. Foster,* 519 N.E.2d 1224, 1227 (Ind.1988)).

■ To determine the existence of duty, we balance three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991). Our supreme court has cautioned that, while this three-part balancing test is a useful tool in determining whether a duty exists, it is to be used only in those instances where the element of duty has not already been declared or otherwise articulated. *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003). As our court has had but one opportunity to address the existence of an employer's duty to preserve evidence for an employee's third-party product liability action, *see Murphy,* 580 N.E.2d at 687, and our supreme court has yet to address this precise issue, we cannot say that this area of the law is "well settled." *See Zubrenic v. Dunes Valley Mobile Home Park, Inc.,* 797 N.E.2d 802, 805–06 (Ind.Ct.App.2003), *trans. denied.* Therefore, we turn to the three factors of the *Webb* balancing test.

### A. *Relationship of the parties*

Midwest contends that the relationship of the parties does not give rise to a duty to preserve evidence. Specifically, Midwest argues that the trial court's determi-

nation that Drew's status as Midwest's employee at the time of the explosion furnishes the necessary relationship to establish duty is contrary to the holding of *Murphy v. Target Products*. In *Murphy*, this court considered whether an employee injured by a power saw could maintain an action against his employer for tortious interference with the employee's prospective products liability claim against a third-party manufacturer due to the intentional or negligent spoliation of potential evidence. *Id.* at 688. The court concluded that the employer had no duty to maintain evidence for the employee's possible product liability action. *Id.* at 690.

However, the *Murphy* court reserved the option of recognizing such a duty if the circumstances and relationship between the parties so merited:

> at least in the absence of an independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant, the claim of negligent or intentional interference with a person's prospective or actual civil litigation by the spoliation of evidence is not and ought not be recognized in Indiana.

*Id.* at 690.[1]

We believe that under the facts and circumstances presented here, Midwest and Drew had a "special relationship" to support the recognition of a duty to preserve evidence from the explosion. Not only was Midwest Drew's employer at the time of the explosion, Midwest knew the pump and related items were needed for the IOSHA investigation and had specifically been instructed by an IOSHA officer not to dispose of them. Darling witnessed the explosion and knew that Drew had been gravely injured while working for Midwest. Midwest knew and reasonably should have known that Drew might likely have a claim against the manufacturer of the pump involved in the explosion. A mere seven days after the explosion, and after having been instructed by an IOSHA official to preserve the evidence, Darling instead disposed of all the equipment and debris, as well as Drew's clothing and wallet. Under these facts and circumstances, we conclude that Froman has identified a "cognizable relationship" with Midwest. *See Thompson*, 704 N.E.2d at 136.

### B. *Foreseeability* [2]

Next, to establish a duty under *Webb*, Froman must allege foreseeable harm from the loss of evidence. *Id.* The foreseeability of harm to the estate of a worker who died as the result of an explosion by the destruction of the electric pump being used at the time of the explosion is clear. An environmental services company should expect that a piece of equipment in use at the time of an explosion and fire is reasonably suspect as a

---

1. We note that *Murphy* did not utilize the *Webb* three-factor balancing test, but instead focused entirely on the relationship between the parties, "considering the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship." 580 N.E.2d at 688 (citing *Lawson v. Howmet Aluminum Corp.*, 449 N.E.2d 1172, 1177 (Ind. Ct.App.1983)).

2. This court has addressed the subtle distinction between foreseeability analysis as to duty and foreseeability analysis as to proximate cause. *See Goldsberry v. Grubbs*, 672 N.E.2d 475, 478–79 (Ind.Ct.App.1996), *trans. denied*; *Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 499 (Ind.Ct.App.2003), *trans. denied*. However, our supreme court in *Estate of Heck v. Stoffer*, 786 N.E.2d 265, 269 (Ind.2003), declined to "take a narrow view of Webb's foreseeability of harm prong." Therefore, we may consider specific facts when addressing foreseeability under duty. *See Lane v. St. Joseph's Reg'l Med. Ctr.*, 817 N.E.2d 266, 271–72 n. 4 (Ind.Ct.App.2004); *Nance v. Holy Cross Counseling Group*, 804 N.E.2d 768, 772 n. 1 (Ind.Ct.App.2004), *trans. denied*.

cause of that explosion and fire. Moreover, it is reasonable to conclude that litigation was foreseeable against the manufacturer of the "explosion-proof" pump in use at the time of the explosion and that the loss of the pump would harm that potential litigation. Finally, Midwest was aware that the pump was necessary to the IOSHA investigation into the cause of the explosion. Therefore, the foreseeability factor weighs in favor of recognizing a duty.

## C. *Public Policy*

■ Finally, to establish duty on the part of Midwest, Froman is required to "allege sufficient supporting facts to demonstrate that recognition of a duty to maintain evidence would promote Indiana's policy goals." *Thompson* at 137. As noted above, this court has recognized a negligent spoliation of evidence claim against a third party. *See id.* In doing so, we noted that, "in Indiana, persons may be held accountable for their actions within the bounds of a factfinder's determination of reasonableness." *Id.* at 139 (discussing *Stump v. Commercial Union*, 601 N.E.2d 327, 332–34 (Ind.1992)). Here, as was the case in *Thompson*, we conclude that "[t]o preclude the [plaintiff's] claim at this early stage of litigation would be to ignore this accountability policy that undergirds Indiana's common law tort doctrine." *Id.*

In addition, another area of Indiana law supports the recognition of a duty to preserve evidence in these circumstances. Specifically, Indiana Code section 35–44–3–4 provides that "a person who . . . alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation . . . commits obstruction of justice, a Class D felony." Ind.Code § 35–44–3–4 (2004).

■ Midwest argues that other public policy considerations weigh against recognizing a claim of spoliation of evidence. First, Midwest contends that there is strong state policy to relegate disputes over employee injuries to the worker's compensation system. The exclusivity provision of the Worker's Compensation Act specifically applies to rights and remedies granted an employee on account of personal injury or death by accident. Ind. Code § 22–3–2–6 (1991 & Supp.2004). As such, the trial court properly dismissed Froman's complaint for wrongful death against Midwest.

However, personal injury means "only injury by accident arising out of and in the course of the employment[.]" Ind.Code § 22–3–6–1(e) (1991 & Supp.2004). Froman's complaint for spoliation of evidence alleges an altogether different type of injury—the loss of Froman's claim against the manufacturer of the pump involved in the explosion. Because the loss of the potential claim against the pump manufacturer is not a "personal injury," we conclude that Froman's action is not barred by the worker's compensation exclusivity provision. *Accord Oliver v. Stimson Lumber Co.*, 297 Mont. 336, 993 P.2d 11, 16 (1999) ("a cause of action for spoliation of evidence is an interference with a property interest rather than a personal injury, which falls outside the exclusivity provisions of the [Montana Workers' Compensation] Act.").

Midwest also contends that the difficulty and speculative nature of proving damages weighs against recognition of a tort action for spoliation of evidence. However, by pursuing a tort action for negligent spoliation of evidence, Froman has undertaken the burden of proving that Midwest breached its duty to maintain the pump, that she was harmed by the breach, and that the harm resulted in damages that can be proven with reasonable specificity. *See Thompson*, 704 N.E.2d at 140.

In addition, Midwest argues that courts have "several means and remedies at [their] disposal to deter parties from spoliation of evidence." Br. of Appellant at 21. We recognize that existing sanctions and remedies do serve to deter spoliation of evidence by parties to litigation and their attorneys. *See Gribben,* 824 N.E.2d at 355 (discussing evidentiary inferences, sanctions for discovery violations under Indiana Trial Rule 37(B), attorney discipline under the Indiana Rules of Professional Conduct, and criminal penalties for perjury or obstruction of justice). However, these sanctions and remedies are unavailable against a third-party spoliator.

Finally, both parties direct us to cases from other jurisdictions addressing the recognition of spoliation of evidence as an independent tort or as an action under existing negligence law. *See generally,* Benjamin J. Vernia, Annotation, *Negligent Spoliation of Evidence, Interfering with Prospective Civil Action, as Actionable,* 101 A.L.R.5th 61 (2005). While caselaw from other jurisdictions is instructive, in light of Indiana's previous recognition of a negligent spoliation of evidence claim against a third party, and the balancing of the relationship between the parties, foreseeability, and public policy, we conclude that Froman has alleged a viable claim for intentional, third-party spoliation of evidence against Midwest.

### Conclusion

Under the particular facts and circumstances presented here, the trial court properly denied Midwest summary judgment on Froman's claim of spoliation of evidence and punitive damages. Affirmed.

BAILEY, J., and SULLIVAN, J., concur.