Nicole L. THOMPSON, a minor, by Next Friend Brian THOMPSON and Stella Thompson, and Brian Thompson and Stella Thompson, Individually and as Parents and Natural Guardians of Nicole L. Thompson, Appellants–Plaintiffs,

v.

Jeff OWENSBY, Rhonda Owensby, Henry Whitis, Alva Whitis, Orrville Leather, Inc., and Indiana Insurance Co., Appellees–Defendants.

No. 73A05–9804–CV–232.

Court of Appeals of Indiana.

Dec. 29, 1998.

Theodore F. Smith, Jr., Teresa L. Todd, Smith, Todd & Farrell, Anderson, for Appellants–Plaintiffs.

Phillip Linnemeir, Robert B. Thornburg, Smith & Wade, Indianapolis, for Appellees–Defendants.

## OPINION

KIRSCH, Judge.

Nicole Thompson and her parents appeal the trial court's dismissal of their complaint against Indiana Insurance Company (the Insurance Company). The appeal presents a single issue: Whether the Thompsons have stated a negligence claim against the Insurance Company for failure to preserve evidence.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Six-year-old Nicole Thompson was disfigured when a German shepherd attacked her, ripped off part of her ear, bruised her neck, and bit her hand and thigh. The dog had been restrained by a cable in its owners' yard, but it broke free of the cable just before attacking Nicole.

Nicole and her parents sought compensation for her injuries from the dog owners and from the manufacturer of the dog-restraining cable. In addition, Nicole and her parents sought compensation from Henry and Alva Whitis, who were the dog owners' landlords. The Insurance Company, as the Whitises' insurance carrier, investigated the Thompsons' claim and took possession of the restraining cable. The Insurance Company then lost the cable. Neither the Insurance Company nor the Thompsons' representa-

tives had examined or tested the cable before it was lost.

Faced with this loss of potential evidence, the Thompsons sued the Insurance Company for negligence. In the complaint, the Thompsons alleged that the Insurance Company had assumed a duty to safeguard the cable and that the Company had breached its duty by losing the cable. *Record* at 17. The Thompsons further alleged that the loss of the cable had adversely affected their claims against the Whitises, the dog owners, and the cable manufacturer. The demand portion of the Thompsons' complaint was contingent upon the outcome of their underlying claims, stating:

> "WHEREFORE, in the event that the plaintiffs are unsuccessful in their claims against the defendants, [the dog owners], Henry Whitis, Alva Whitis and [the cable manufacturer], for the reason that the cable was lost, the plaintiffs pray for judgment against the defendant, Indiana Insurance Company, in an amount commensurate with their injuries and damages."

*Record* at 17–18.

The Insurance Company responded with a motion to dismiss, arguing that the Thompsons' complaint attempted to assert a claim for spoliation of evidence, which, according to the Insurance Company, our State does not recognize. The trial court agreed with the Insurance Company and granted the Motion to Dismiss. Upon the Thompsons' request, the trial court entered a final judgment of dismissal for the purpose of appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

■ When reviewing a trial court's decision on a motion to dismiss, this court must accept all factual allegations in the plaintiffs' complaint as true. Further, this court must draw every reasonable inference in the plaintiffs' favor from the alleged facts. *Stevens v. Department of Pub. Welfare*, 566 N.E.2d 544, 546 (Ind.Ct.App.1991), *trans. denied; Myers v. Moyars*, 667 N.E.2d 1120, 1121 (Ind.Ct. App.1996), *trans. denied.* In this case, we must determine whether the alleged facts state an actionable claim according to Indiana law.

### II. Duty to Maintain Evidence

This action presents a question of first impression: whether an insurance company that loses evidence may be liable to a third party claimant for damages attributable to the loss of the evidence. The parties here limit their arguments to one aspect of that question: whether the Insurance Company had an actionable duty to maintain the evidence.

The Thompsons contend that there is a duty to maintain evidence and that the duty is actionable in tort. They present two arguments in support of their contention. First, they submit that when the Insurance Company took possession of the evidence, it gratuitously assumed a duty to maintain that evidence. Second, they argue that the Insurance Company had an independent duty to maintain the evidence. In response, the Insurance Company argues that the Thompsons have not stated an actionable claim because the complaint alleged no special circumstances creating a duty to maintain evidence.

The parties' dispute about the existence of a duty can be resolved by reference to the guidelines our supreme court has identified for analyzing duty issues. According to the court the analysis turns on three main factors: 1) the relationship between the parties, 2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and 3) the public policy promoted by recognizing an enforceable duty. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991); *see also Cram v. Howell*, 680 N.E.2d 1096, 1097 n. 1 (Ind. 1997); *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 241 (Ind.1997); *see also Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind.Ct. App.1996) (foreseeability analysis for duty is more general than foreseeability analysis for proximate cause).

In the procedural posture of this case, the three factors provide touchstones for testing the adequacy of the duty allegations in the complaint. To allege an actionable duty based on the three factors, the Thompsons must identify a cognizable relationship with the Insurance Company, they must allege foreseeable harm from the loss of evidence,

and they must allege sufficient supporting facts to demonstrate that recognition of a duty to maintain evidence would promote Indiana's policy goals.

## A. Relationship Between the Parties

In support of its position that there is no cognizable relationship between the parties, the Insurance Company cites *Murphy v. Target Products,* 580 N.E.2d 687 (Ind.Ct. App.1991), *trans. denied.* In *Murphy,* the issue was whether an employee injured by an allegedly defective product could maintain a spoliation· of evidence action against his employer for failure to maintain evidence necessary for· a product liability action. 580 N.E.2d at 688. The court concluded that the employer had no duty to maintain evidence for the employee's possible product liability action. In stating its holding, however, the *Murphy* court reserved the option of recognizing such a duty if the relationship between the parties so warranted:

> "We ... hold that at least in the absence of an independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant, the claim of negligent or intentional interference with a person's prospective or actual civil litigation by the spoliation of evidence is not and ought not be recognized in Indiana."

580 N.E.2d at 690.

■ In contrast to the parties in *Murphy,* the relationship between the parties in this case supports recognition of a duty to maintain evidence. As this court has recognized in other contexts, an alleged tortfeasor's knowledge of the plaintiff's situation or circumstances may support recognition of a duty. *See T.S.B. by Dant v. Clinard,* 553 N.E.2d 1253, 1256 (Ind.Ct.App.1990) (relationship did not warrant recognition of duty); *Lawson v. Howmet Aluminum Corp.,* 449 N.E.2d 1172, 1177 (Ind.Ct.App.1983) (relationship warranted recognition of duty). In the context of the loss of evidence by an insurance carrier, the relationship between the carrier and a third party claimant could warrant recognition of a duty if the carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation.

■ A liability carrier has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds. *Burr v. United Farm Bureau Mut. Ins. Co.,* 560 N.E.2d 1250, 1255 (Ind.Ct.App.1990), *trans. denied.* In carrying out this duty, carriers take possession of documents and things that must be authenticated and tested to evaluate claims. These same documents and things will be key items of evidence in the event that the claims are denied and litigation ensues. This conduct by necessity gives rise to a relationship with the third party claimant.

Here, the Thompsons allege that the Insurance Company is in the business of providing liability insurance. *Record* at 16 (Complaint, ¶ 2). The Thompsons further allege that after the Insurance Company was aware of their claim, the Company's investigator took possession of the dog-restraining cable, which the dog owners had asserted was defective. *Record* at 16–17 (Complaint, ¶¶ 4–5, 10). A liability carrier like the Insurance Company can rationally be held to understand that once a claim is filed, there is a possibility of litigation concerning the underlying injuries. The Insurance Company's knowledge and investigation of the Thompsons' claims and its possession of what would be a key item of evidence in the event litigation ensued created a relationship between the Company and the Thompsons that weighs in favor of recognizing a cognizable duty to maintain evidence.

## B. Foreseeability of Harm

■ The allegations that support recognition of a special relationship between the Insurance Company and the Thompsons are also germane to the foreseeability aspect of the duty issue. Liability insurance carriers are no strangers to litigation, and it strains credulity to posit in a motion to dismiss that a liability carrier could be unaware of the potential importance of physical evidence. If litigation was foreseeable in this case, the evidentiary value of the restraining cable was foreseeable as well. *See Boyd v. Travelers Ins. Co.,* 166 Ill.2d 188, 209 Ill.Dec. 727, 652

N.E.2d 267, 271 (Ill.1995).[1] Further, the foreseeability of the harm in losing evidence can be inferred from the allegation that the Company's investigator took possession of the cable: if an insurance carrier's investigator deems certain evidence important enough to be collected, it is foreseeable that loss of the evidence would interfere with a claimant's ability to prove the underlying claim.

### C. Public Policy Concerns

The Insurance Company argues that its sole obligation is to protect the interests of its insureds, and that it has no duty to third party claimants like the Thompsons. In support of this position the Company relies on four Indiana cases: *Dimitroff v. State Farm Mut. Auto. Ins. Co.*, 647 N.E.2d 339 (Ind.Ct. App.1995), *Eichler v. Scott Pools, Inc.*, 513 N.E.2d 665 (Ind.Ct.App.1987), *Martin v. Levinson*, 409 N.E.2d 1239 (Ind.Ct.App. 1980), and *Winchell v. Aetna Life & Casualty Ins. Co.*, 182 Ind.App. 261, 394 N.E.2d 1114 (1979). Although the courts in each of these cases held that the insurance company-defendant had no duty to the claimant, the duties at issue were dramatically different from the duty at issue here.

In each of the four cases, the dispute was based on the manner in which the company conducted itself with regard to the claimant. The claimant in each case sought either to estop the carrier from asserting a defense or to hold the carrier liable for failure to settle in good faith. The court in each case reasoned that the carrier had no duty to the claimant, because the breadth of the putative duty was beyond the scope of the carrier's obligation to the claimant. *Dimitroff*, 647 N.E.2d at 342 (claimant sought to bind carrier to good faith settlement duty based on claimant's separate policy with carrier); *Eichler*, 513 N.E.2d at 667–68 (claimant asserted derivative liability against insureds based on carrier's alleged bad faith); *Martin*, 409 N.E.2d at 1244 (claimant sought to estop carrier from asserting statute of limitations defense); *Winchell*, 182 Ind.App. at 266, 394 N.E.2d at 1118 (claimant sought to bind carrier to duty of good faith negotiation).

Here, in contrast, the duty at issue does not arise from the Insurance Company's conduct vis-a-vis the Thompsons. Instead, the duty arises from the Company's business practice regarding the collection and preservation of evidence. A liability insurance carrier would be hard-pressed to conduct business without some mechanism for collecting and preserving evidence, be it by performing those tasks internally or by ensuring that the tasks are performed externally. When, as the allegations here suggest, the carrier is in a better position than the lay claimant to understand the significance of evidence and the need to maintain it, the carrier can validly be held to a duty to maintain the evidence.[2] To fulfill its duty the Insurance Company did not need to conduct itself in any particular manner with regard to the Thompsons. Rather, the Insurance Company needed only to exercise an appropriate degree of care in maintaining evidence that could have been relevant to an underlying claim. Exercising such care is as likely to benefit a carrier as it is a claimant.[3]

The distinction between this case and the cases cited by the Insurance Company is analogous to the distinction our supreme court made between the three claims presented in *Stump v. Commercial Union*, 601

---

**1.** Analysis of the foreseeability aspect of the duty issue broaches the general elements of causation and damages. In *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995) the court provides a helpful discussion of those two elements. *Id.* at 271–72. The parties here limit their arguments to the duty issue, so we limit our holding to the determination that the complaint presents sufficient allegations as to causation and damages to avoid dismissal. *See infra* at 12.

**2.** We do not consider whether, in a different context, a claimant would have a corresponding duty to maintain evidence in the claimant's possession.

**3.** Indiana has previously recognized that in certain circumstances, a liability insurance carrier has a duty to an adverse claimant. In *Stewart v. Walker*, 597 N.E.2d 368 (Ind.Ct.App.1992), the court considered whether an insurance carrier had a duty to inform a claimant of the time limits in a policy and held that the carrier had such a duty, particularly where the claimant had initiated contact with the carrier prior to the expiration of the time limit. Here, it is sound policy to impose a similar duty.

N.E.2d 327 (Ind.1992). In *Stump*, an injured employee sued his employer's worker's compensation carrier, asserting claims in tort as well as claims for breach of the duty of fair dealing and for breach of fiduciary obligation. The court held that the plaintiff could proceed on his tort claims against the carrier, but that the plaintiff had no cause of action for breach of fair dealing or breach of fiduciary obligations. *Id.* at 332–34. Although the court's rationale was rooted in part in the exclusivity provisions of the Worker's Compensation Act, the court also noted that the three-factor duty analysis supported recognition of the plaintiff's tort claim. In particular, the court stated that Indiana has a strong, constitutionally-based policy of allowing parties to pursue remedies by due course of law. *Id.* at 332.

▮ In the tort context, the policy recognized in *Stump* can be succinctly described as accountability: in Indiana, persons may be held accountable for their actions within the bounds of a factfinder's determination of reasonableness. To preclude the Thompsons' claim at this early stage of the litigation would be to ignore this accountability policy that undergirds Indiana's common law tort doctrine. As such, the Thompsons must be allowed to present their allegations to a factfinder for a determination of whether the Insurance Company's actions were appropriate under the circumstances. In equal measure, the Insurance Company is entitled to present its position to the same factfinder. After both sides have presented their cases, the factfinder will determine whether the Company is liable for the loss of the evidence and whether any damages are attributable to that loss.[4]

As the Insurance Company here points out, it will incur costs in maintaining evidence. This cost does not preclude imposition of a duty, however, for no cognizable duty is cost-free. Moreover, the evidence must be maintained by someone, and a liability carrier can typically maintain evidence at a lower cost than an individual claimant because the carrier can distribute the cost among all policyholders. Further, the cost of failure to maintain the evidence would in most circumstances be much greater than the cost of maintaining it, due to the increased complexity of the litigation for lack of direct evidence. We note, though, that the ability to distribute or avoid costs does not compel a carrier to take possession of the evidence in the first instance. In another case, the most efficient resolution of the evidence problem may be for the parties to state at the outset how evidence will be maintained, who will maintain it, and how it will be shared for expert examination.[5] In this case, however, the Company took possession of the evidence and lost it. As such, the Thompsons may pursue a claim to hold the Company accountable for negligent failure to maintain evidence.[6]

A liability carrier like the Insurance Company is in a unique position among tort litigants. Using its experience, a carrier is able to adopt business practices that lead to resolution of claims at the lowest possible cost to the carrier. The claims-resolution practices thus benefit the carrier and its shareholders, and can benefit third party claimants and insureds so long as the carrier uses responsible, efficient practices. It is reasonable for the law to require that claims resolution

---

4. In a case similar to this one, a federal district court allowed the plaintiff's claim to go forward. *See Pirocchi v. Liberty Mut. Ins. Co.*, 365 F.Supp. 277 (E.D.Pa.1973).

5. As at least one author has noted, communication and planning among the parties' attorneys could eliminate the need for negligence litigation in this context. *See* Doug Cressler, *Spoliation of Evidence*, 36 Res Gestae 510, 514–15 (1993). The author analyzed the spoliation issue in the context of the then-incipient evidentiary rules. He also examined alternative theories and remedies for spoliation.

6. Our holding that the Thompsons have stated a claim is not based upon the theory that the Insurance Company assumed a duty to maintain the evidence once it was collected. To base the duty solely on the act of collecting evidence could result in figurative games of evidentiary "hot potato"—with no party willing to take possession of the evidence. This could in turn result in further loss of evidence for lack of effort to maintain it. Our holding here is based on our conclusions that the Insurance Company and the Thompsons were in a special relationship, that the harm involved in loss of evidence was foreseeable, and that recognition of a duty is consistent with Indiana's policy of accountability.

practices be responsible, because the carrier has the unique experience and ability to structure its practices to avoid harm. If a carrier intentionally or negligently engages in a claims-resolution practice that breaches the standard of care established by law, a third-party claimant is justified in seeking to hold the carrier liable for damages arising from the breach.

### III. Remedy for Failure to Maintain Evidence

The remedy for failure to maintain evidence differs among jurisdictions. *See* Scott Katz & Ann Mascara, *Spoilage of Evidence—Crimes, Sanctions, Inferences and Torts*, 29 Tort & Ins. L.J. 51, 52–72 (1993). Indiana courts, in resolving cases outside of the insurance context, have dealt with the issue by imposing an evidentiary inference against the party that lost the evidence. *See Porter v. Irvin's Interstate Brick & Block Co.*, 691 N.E.2d 1363, 1364–65 (Ind.Ct.App.1998). Courts in other jurisdictions have addressed the issue by imposing discovery sanctions. *See, e.g., American Family Ins. Co. v. Village Pontiac–GMC, Inc.*, 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115, 1118 (1992). In the present case, however, the Thompsons have chosen to pursue a tort action rather than seeking a discovery sanction or availing themselves of an evidentiary inference. That choice is the Thompsons' prerogative. By exercising the prerogative, the Thompsons have accepted the burden of proving that the Insurance Company breached its duty to maintain the restraining cable, that the Thompsons were harmed by the breach, and that the harm resulted in damages that can be proven with reasonable specificity.[7] We hold that the Thompsons are entitled to go forward with their claim based on the Insurance Company's duty to maintain evidence.

Reversed.

ROBB, J., concurs.

STATON, J., concurs with separate opinion.

STATON, Judge, concurring.

I concur in the opinion of the majority. However, I write separately to express that I would limit the Insurance Company's or any third party's duty to maintain evidence to instances where the third party has actual notice of the underlying litigation and that the evidence in its possession is relevant to the litigation.[8] This notice would give rise to the "special relationship" necessary to impose such a duty. *See Murphy v. Target Products*, 580 N.E.2d 687, 688–89 (holding that a special relationship or duty arising by way of an agreement, contract, statute, independent tort, or other special circumstance is required before a duty to preserve evidence will be imposed in Indiana). In this case, it is clear that the Insurance Company was on notice that the evidence in its possession was important to a pending lawsuit. The Thompsons' suit against the Owensbys was filed on July 30, 1992. In May of 1993, the complaint was amended to add the Whitises and Orrville Leather, Inc. as defendants. This chronology makes it clear that the Insurance Company, involved in the suit on behalf of the Whitises, knew of the suit involving the restraining cable before it took possession of the restraint. This is enough to establish a duty on the part of Indiana Insurance to maintain the evidence.

However, in cases where litigation involving the evidence in the third party's possession is speculative, I would hold that there is no duty for the third party to maintain the evidence until it is put on notice that the evidence should be maintained.[9] This places

---

7. The Thompsons base their damages on their prospective inability to prove their claims against the other defendants. The damages could also be based on the cost of retaining experts or conducting discovery needed to provide alternative proof of the alleged defect in the restraining cable.

8. This category would include insurance companies who take possession of evidence in order to investigate claims against their insureds. As the

majority recognizes, such insurance companies are presumed to have actual notice that the evidence will be relevant to underlying litigation in the event the claim is denied.

9. For instance, if the suit against the manufacturer of the restraining cable had not yet been filed, and the Thompsons had not informed the Insurance Company that such a suit was being contemplated, the Insurance Company would not have known that the restraining cable would be

a burden on the plaintiff, or the potential plaintiff, to be aware of who has possession of the relevant evidence. If the plaintiff is pursuing or expects to pursue a lawsuit based on the evidence in question, it will be up to him to inform the third party in possession of the evidence of his intent. As the plaintiff is the party responsible for putting on a case, he would be the appropriate person to carry the burden of knowing who has possession of the evidence and putting that party on notice that the evidence must be preserved. After a third party receives notice that the evidence in its possession is relevant to present or future litigation, a special relationship has been established, and the third party would then have a duty to maintain the evidence in its possession.

We should not impose a duty on third parties to store evidence indefinitely, just in case an underlying suit might be filed. It is also too much to require a third party to calculate the statute of limitations for a potential lawsuit, so that the third party will know when it is safe to throw out evidence that could be relevant. Too, we should not require a third party to speculate about which items in its possession might be important to a potential suit. Therefore, I would hold that the duty to maintain evidence should be imposed on a third party only when that third party has actual notice that a suit on the underlying injury has been filed, and that the material in its possession is relevant evidence. Accordingly, I concur.

relevant to an underlying lawsuit. Under those facts, there would be no duty to maintain the evidence for use in the potential suit against the restraint's manufacturer. However, the Insurance Company would still be under a duty to maintain the evidence until the claim against its insured was settled, whether by payment of the claim or through litigation.