893 N.E.2d 1068 (2008)
AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Appellant-Defendant,
v.
Traci WILMOTH and Charlotte Sharpe as Administratrix of the Estate of Richard Lee Rider, Sr., Appellee-Plaintiffs, and
C. Robert Bowers and Betty J. Bowers, Appellees/Co-Defendants.
No. 49A02-0611-CV-1064.
Court of Appeals of Indiana.
September 19, 2008.
*1069 James A. Goodin, Bradley J. Schulz, Goodin Abernathy, LLP, Indianapolis, IN, Attorney for Appellant.
Robert P. Stoner, Spangler, Jennings, Dougherty, P.C., Merrillville, IN, Attorneys for Appellees C. Robert Bowers and Betty J. Bowers.
C. Dennis Wegner, Wegner & Associates, P.C., Timothy J. Hulett, Stephen J. Peters, David I. Rubin, Harrison & Moberly, LLP, Indianapolis, IN, Attorneys for Appellees Traci Wilmoth and Charlotte L. Sharpe as Administratrix of the Estate of Richard Lee Rider, Sr.

OPINION
MAY, Judge.
Traci Wilmoth and Richard Rider lived with their two children in a house they rented from Robert and Betty Bowers (collectively, "Bowers"). The house burned November 1, 2000, and the children were killed. Rider died a week later from injuries sustained in the fire. Wilmoth and Charlotte Sharpe, administratrix of Rider's estate, sued The American National Property and Casualty Co. (ANPAC), alleging it permitted spoliation of evidence concerning the origin of the fire, which evidence they might have needed in an action against Bowers. ANPAC's motion for summary judgment was denied and a jury awarded damages to Wilmoth and Sharpe.
*1070 ANPAC was entitled to summary judgment because it had no duty to preserve the evidence for Wilmoth and Sharpe.[1] We accordingly reverse.

FACTS AND PROCEDURAL HISTORY[2]
While fighting the fire, firefighters threw a couch and other items onto the front yard, where they remained for approximately six weeks. The fire department concluded the fire was accidental and was caused by an electrical space heater. Bowers eventually discarded the items. Wilmoth and Sharpe's experts believed the fire started because of electrical arcing from an air conditioner power cord "in the area of the sofa." (Appellant's App. at 305, 310.)
Wilmoth and Sharpe brought an action against ANPAC for damages they alleged resulted from spoliation of evidence, specifically the couch, which spoliation was attributable to ANPAC. ANPAC's motion for summary judgment was denied and Wilmoth and Sharpe were awarded damages after a jury trial.

DISCUSSION AND DECISION
Our standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Row v. Holt, 864 N.E.2d 1011, 1013 (Ind.2007).
Spoliation of evidence is the intentional destruction, mutilation, alteration, or concealment of evidence. Glotzbach v. Froman, 854 N.E.2d 337, 338 (Ind.2006). If spoliation by a party to a lawsuit is proved, the jury may infer that the missing evidence was unfavorable to that party. Id.
In the context of the loss of evidence by an insurance carrier, the relationship between the carrier and a third party claimant may warrant recognition of a duty if the carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation. Thompson ex rel. Thompson v. Owensby, 704 N.E.2d 134, 137 (Ind.Ct.App. 1998), trans. denied 726 N.E.2d 304 (Ind. 1999).
In Thompson, she was injured when a dog broke free of a restraining cable and attacked her. Thompson sued the dog's owners, the manufacturer of the cable, and the dog's owners' landlords. The landlords' insurance company investigated Thompson's claim and took possession of the cable, then lost it. It did not examine or test the cable before it was lost.
Faced with the loss of potential evidence, Thompson sued the insurance company, alleging it had assumed a duty to safeguard the cable and breached its duty by losing it. Thompson further alleged the loss of the cable had adversely affected her claims against the landlords, the dog's owners, and the cable manufacturer.
In determining whether an insurer owes a duty to a plaintiff to refrain from destroying evidence, we analyze (1) the relationship between the parties, (2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and *1071 (3) the public policy promoted by recognizing an enforceable duty. Id. at 136.
ANPAC should have been granted summary judgment because it owed no duty to Wilmoth and Sharpe. Its contractual relationship was with its insured, Bowers; it never had exclusive possession of the couch; and it had no notice of a pending lawsuit at the time of the alleged spoliation.

1. Relationship

The relationship between Thompson and the insurer supported recognition of a duty to maintain evidence, but Wilmoth and Sharpe had no such relationship with ANPAC.
Thompson alleged that after the insurer was aware of the claim, its investigator took possession of the cable the dog owners had asserted was defective. "A liability carrier . . . can rationally be held to understand that once a claim is filed, there is a possibility of litigation concerning the underlying injuries." Id. The insurer's knowledge and investigation of Thompson's claims and its possession of what would be a key item of evidence if there were litigation created a relationship between the insurer and Thompson that weighed in favor of recognizing a duty to maintain evidence. Id.
ANPAC, by contrast, never had possession, much less exclusive possession, of the couch. When Bowers disposed of the couch, the Indianapolis Fire Department had determined the fire was an accident caused by an electric space heater, Wilmoth and Sharpe's expert had not yet provided its report suggesting the couch might be involved, and Wilmoth and Sharpe had not filed a lawsuit.
The duty to preserve evidence has limits. In Glotzbach, 854 N.E.2d at 339-40, our Supreme Court found no relationship between an employee who alleged spoliation of evidence and his employer:
First, an employer will virtually always be aware of an injury occurring in the workplace. If that knowledge were sufficient to establish a special relationship, the practical effect would be that an employer always has a duty to preserve evidence on behalf of its employee for use in potential litigation against third parties. This would directly conflict with Murphy [v. Target Prods., 580 N.E.2d 687, 690 (Ind.Ct.App.1991), reh'g denied, trans. denied] as well as the law in most other states that have addressed the specific issue of a third-party spoliation claim by an employee against an employer based on evidence relevant to an industrial accident covered by worker's compensation.
Murphy, like Glotzbach, involved an employer-employee relationship. Murphy was injured in a workplace accident involving a power saw and alleged his employer's failure to preserve the saw interfered with his prospective product liability claim against the manufacturer. We dismissed the spoliation claim, finding there was no duty on the part of an employer to preserve, for an employee, potential evidence in an employee's possible third party action. 580 N.E.2d at 690. After surveying case law from other jurisdictions we concluded that:
As a general rule, the courts considering this question have found that absent some special relationship or duty arising by way of an agreement, contract, statute, an independent tort, or other special circumstance, there is no duty owed by an employer to an employee to preserve possible evidence for the employee to aid that person in some future legal action against a third party.
Id. at 688-89.
In Glotzbach, our Indiana Supreme Court held Murphy, and not Thompson, *1072 controlled: "an employee injured in a workplace accident to which the [worker's compensation act] applies has no claim against the employer for third-party spoliation of evidence relevant to claims arising from that accident." 854 N.E.2d at 339.
In Thompson, however, we found a "special relationship" between a third-party claimant and an insurance carrier:
A liability carrier has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds. In carrying out this duty, carriers take possession of documents and things that must be authenticated and tested to evaluate claims. These same documents and things will be key items of evidence in the event that the claims are denied and litigation ensues. This conduct by necessity gives rise to a relationship with the third party claimant.
704 N.E.2d at 137 (citation omitted). As to the insurer's knowledge litigation might ensue, we said: "A liability carrier like the Insurance Company can rationally be held to understand that once a claim is filed, there is a possibility of litigation concerning the underlying injuries." Id.
Wilmoth and Sharpe had no such relationship with ANPAC; they had brought no claim when Bowers disposed of the couch. And as explained below, in light of the fire department's determination a space heater in the center of the living room caused the fire, no claim for which the couch might be a "key item of evidence" could have been anticipated.

2. Foreseeability

It was not foreseeable the loss of the couch might interfere with any claim Wilmoth and Sharpe would later assert. In Thompson we inferred foreseeability from the insurer's actual possession of the evidence: "if an insurance carrier's investigator deems certain evidence important enough to be collected, it is foreseeable that loss of the evidence would interfere with a claimant's ability to prove the underlying claim." Id. at 138. But other language in Thompson suggests foreseeability does not depend on actual possession:[3]
Liability insurance carriers are no strangers to litigation, and it strains credulity to posit in a motion to dismiss that a liability carrier could be unaware of the potential importance of physical evidence. If litigation was foreseeable in this case, the evidentiary value of the restraining cable was foreseeable as well.
Id.
We decline ANPAC's invitation to hold an insurer can never owe a third party a duty to preserve evidence unless it has exclusive possession[4] of the evidence, but *1073 we must also decline Wilmoth and Sharpe's invitation to hold an insurer is obliged to preserve all physical evidence at the scene of any event that might implicate its policy coverage. Rather, we find ANPAC had no duty toward Wilmoth and Sharpe where the couch had no foreseeable "evidentiary value," Thompson, 704 N.E.2d at 138, and could not have been expected to be a "focus of that litigation." Burton v. Estate of Davis, 730 N.E.2d 800, 806 (Ind.Ct.App.2000).[5]

3. Public Policy

Finally, as to public policy concerns, we acknowledged in Thompson the insurer's argument that its sole obligation is to protect the interests of its insureds, and that it has no duty to third party claimants like Thompson. But we distinguished decisions that so held, because "the duties at issue were dramatically different from the duty at issue here." 704 N.E.2d at 138. In those decisions the dispute was based on the manner in which the company conducted itself with regard to the claimant.
In Thompson the duty did not arise from the insurer's conduct vis-a-vis Thompson. Instead, it arose from the insurer's business practice regarding the collection and preservation of evidence. "When . . . the carrier is in a better position than the lay claimant to understand the significance of evidence and the need to maintain it, the carrier can validly be held to a duty to maintain the evidence." Id. To fulfill its duty the insurer did not need to conduct itself in any particular manner with regard to Thompson; it needed only to exercise an appropriate degree of care in maintaining evidence that could have been relevant to an underlying claim. Id.
That policy does not support the imposition of a duty on ANPAC under the facts before us. In Thompson, where a dog broke free of a restraining cable and attacked Thompson, the significance of the restraining cable and the need to maintain it was apparent to the insurer; Thompson had sued the dog owners and the manufacturer of the cable. In the case before us, by contrast, the significance of the couch and the need to maintain it were not apparent. No lawsuit had been filed and nothing suggested the couch was "evidence that could have been relevant to an underlying claim." Thompson, 704 N.E.2d at 138. To find a duty in this case would require insurers to preserve any potentially relevant evidence available after any potentially covered event. Retention and safekeeping of that amount of physical evidence would be a practical impossibility in most situations.

*1074 CONCLUSION
We reverse the denial of ANPAC's motion for summary judgment, as ANPAC owed Wilmoth and Sharpe no duty to preserve evidence when no lawsuit had been filed, when the relevance of the evidence could not have been anticipated, and when ANPAC never had possession of the evidence.
Reversed.
RILEY, J., and KIRSCH, J., concur.
NOTES
[1] ANPAC raised a number of errors in the admission or exclusion of other evidence at trial, and in the jury instructions. Because ANPAC was entitled to summary judgment we need not address those allegations of error.
[2] We heard oral argument June 9, 2008, in Indianapolis. We commend counsel for their presentation.
[3] We said, in addressing whether there was an assumption of duty:

Our holding that the Thompsons have stated a claim is not based upon the theory that the Insurance Company assumed a duty to maintain the evidence once it was collected. To base the duty solely on the act of collecting evidence could result in figurative games of evidentiary "hot potato"with no party willing to take possession of the evidence. This could in turn result in further loss of evidence for lack of effort to maintain it. Our holding here is based on our conclusions that the Insurance Company and the Thompsons were in a special relationship, that the harm involved in loss of evidence was foreseeable, and that recognition of a duty is consistent with Indiana's policy of accountability.
Id. at 139 n. 6.
[4] In Loomis v. Ameritech Corp., 764 N.E.2d 658, 663 (Ind.Ct.App.2002), reh'g denied, trans. denied 783 N.E.2d 695 (Ind.2002), we said, "For the spoliation of evidence doctrine to apply, the evidence must be exclusively possessed and must be made unavailable, destroyed, or altered." (Emphasis supplied.) That statement was dictum because we were distinguishing testimonial evidence, which was the subject of the Loomis litigation, from other types of evidence. Loomis did not involve a third-party spoliation claim against an insurer. Rather, it was an action by Loomis against Ameritech, the defendant in a personal injury action Loomis had brought, and Ameritech's lawyers.
[5] In Burton, Judge Ratliff wrote:

"It should come as no surprise to a motorist who negligently caused a vehicular accident that his negligence will result in litigation and that the evidence at the accident scene will be a focus of that litigation. It is also a matter of public concern that negligent parties be restrained from destroying or altering key evidence."
730 N.E.2d at 805-06 (emphasis supplied).
Burton was vacated by our Supreme Court's grant of transfer. The parties thereafter reached a settlement and our Supreme Court dismissed the appeal as moot, noting our opinion "remain[ed] vacated and held for naught." Burton v. Estate of Davis, 740 N.E.2d 850, 851 (Ind.2000). However, we find Judge Ratliff's formulation a helpful guide for determining when a duty to preserve physical evidence might arise.