

**FILED**

May 25 2023, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEY FOR APPELLEE
MICHAELIS CORPORATION

Alexander M. Beeman
Reminger Co., LPA
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Safeco Insurance Company of Indiana as Subrogee of Ramona Smith, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Blue Sky Innovation Group, Inc.; Cabela's Wholesale, L.L.C.; TMBC, L.L.C. of Missouri; Bass Pro Outdoor World, L.L.C.; Cabela's Retail MO, L.L.C.; Bass Pro, L.L.C.; Bass Pro Group, LLC; and Michaelis Corporation, <br><br> *Appellees-Defendants.* | May 25, 2023 <br><br> Court of Appeals Case No. 22A-CT-1924 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Patrick J. Dietrick, Judge <br><br> Trial Court Cause No. 49D12-2110-CT-35831 |

**Opinion by Judge Bradford**
Judges May and Mathias concur.

**Bradford, Judge.**

# Case Summary[1]

Safeco Insurance Company of Indiana ("Safeco") filed suit against Michaelis Corporation ("Michaelis"), alleging claims of third-party spoliation and negligence after Michaelis, a restoration company, allegedly discarded certain evidence relating to a fire at the home of one of Safeco's insureds. Michaelis moved to dismiss Safeco's claims, arguing that third-party claims for spoliation of evidence are only available in narrow and limited circumstances in Indiana and Safeco's claim did not fall within the limited circumstances. Michaelis also argued that Safeco's negligence claim was barred by the economic-loss doctrine. The trial court granted Michaelis's motion, dismissing both Safeco's third-party spoliation and negligence claims. Because we believe Safeco's pleadings are sufficient to survive Michaelis's motion to dismiss, we reverse and remand to the trial court for further proceedings.

# Facts and Procedural History

The facts, as alleged in Safeco's complaint, are as follows: on all pertinent dates, Ramona Smith owned a home located at 6648 Marmont Circle in Indianapolis ("the Property"). Safeco was the "insurance carrier for [Smith]

---

[1] We held oral argument in our courtroom in the Indiana Statehouse on May 9, 2023. We wish to commend counsel for the high quality of their written submissions and arguments before the court.

with respect to the Property, and pursuant to its policy of insurance is subrogated to the right of its Insured," *i.e.*, Smith. Appellant's App. Vol. II p. 30. On October 31, 2019, a fire broke out at the Property, causing significant damage.

[3] At some point prior to October 31, 2019, Smith had come to own a Cabela's 12 Tray Pro Series Digital Dehydrator ("the Product"). On November 6, 2019, Safeco conducted a preliminary scene examination, during which it "determined that the fire likely originated on the kitchen countertop, to the left of the sink, where the Product was located." Appellant's App. Vol. II p. 31. Either Smith or Safeco retained Michaelis to perform restoration work at the Property. A representative for Michaelis was present at the preliminary scene examination, during which "the need to preserve the kitchen was verbally communicated" to Michaelis's representative. Appellant's App. Vol. II p. 32. After the preliminary scene examination was complete, the "entrances to the kitchen area were taped off with 'caution tape' so [that] the area could be preserved pending notice to the potentially responsible parties and [the] scheduling of a joint scene exam" and Michaelis "constructed a temporary structure to provide better weather protection and tarping over the area of the fire origin." Appellant's App. Vol. II p. 32. At some point between December 2, 2019 and January 15, 2020, "Michaelis demolished the kitchen and discarded the Product and other artifacts." Appellant's App. Vol. II p. 32.

[4] Following the fire, Safeco paid damages in the amount of $510,861.46 on Smith's behalf in relation to damages sustained during the fire. In an attempt to

recover the funds paid on Smith's behalf, on October 25, 2021, Safeco filed a lawsuit alleging claims of negligence and strict products liability against Blue Sky Innovation Group, Inc.; Cabela's Wholesale, L.L.C.; TMBC, L.L.C. of Missouri; Bass Pro Outdoor World, L.L.C.; Cabela's Retail MO, L.L.C.; Bass Pro, L.L.C., and Bass Pro Group, LLC (collectively, "the Principal Defendants").[2] Safeco also alleged claims of spoliation and negligence against Michaelis. Safeco amended its complaint on December 16, 2021.

[5] As it relates to Safeco's third-party spoliation claim against Michaelis, the amended complaint alleged that the fire had been caused by the Product, Michaelis had been retained to complete restoration work, Michaelis had been made aware of the need to preserve the Product, Michaelis had breached its duty to Safeco when, at some point, it had discarded or destroyed the Product, and Safeco had been harmed by the destruction of the Product. As it related to Safeco's negligence claim, Safeco incorporated its allegations relating to its third-party spoliation claim and further alleged that Michaelis had owed it a duty to exercise reasonable care in performing work at the Property, Michaelis had breached its duty of care by negligently discarding or destroying the Product, and Safeco had been harmed by the destruction of the Product.

---

[2] We note that neither Blue Sky Innovation Group nor any of the Cabela's or Bass Pro parties are participating in the instant appeal. However, pursuant to Indiana Appellate Rule of Procedure 17(A), "[a] party of record in the trial court … shall be a party on appeal." We further note however, that while the instant appeal has been pending, these parties have been dismissed from the trial court action with prejudice, leaving Michaelis Corporation as the only current defendant to the lawsuit.

[6]     On January 5, 2022, Michaelis filed an Indiana Trial Rule 12(B)(6) motion to dismiss and supporting brief, in which it alleged that Safeco had failed to state a claim upon which relief could be granted. Specifically, Michaelis asserted that "third-party claims for spoliation [sic] of evidence as an independent tort are available only in narrow and limited circumstances not alleged nor which could be reasonably inferred" from Safeco's case and "any negligence claim is barred by the economic loss doctrine." Appellant's App. Vol. II p. 40. Safeco filed a response in opposition to Michaelis's motion to dismiss. The Principal Defendants also opposed Michaelis's motion.

[7]     The trial court held a hearing on Michaelis's motion to dismiss on May 11, 2022, at the conclusion of which it took the matter under advisement. On June 7, 2022, the trial court issued an order granting Michaelis's motion to dismiss. In its order, the trial court stated

> Count III and Count IV of the amended complaint are construed by this Court as third-party claims for spoliation. Under prevailing Indiana case law, third-party claims for spoliation of evidence have only been recognized in limited circumstances. No such circumstances have been pled by Safeco. Count III and Count IV of the amended complaint against Michaelis are hereby dismissed for failure to state a claim.

Appellant's App. Vol. II p. 16. At the request of the parties, on July 18, 2022, the trial court entered "partial final judgment for [Michaelis] and against [Safeco] on the Court's June 7, 2022 Order." Appellant's App. Vol. II p. 19.

# Discussion and Decision

## I.    Standard of Review

The standard of review on appeal of a trial court's grant of a motion to dismiss for the failure to state a claim is de novo and requires no deference to the trial court's decision. *Sims v. Beamer*, 757 N.E.2d 1021, 1024 (Ind. Ct. App. 2001). The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact. *Id.* "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 134 (Ind. 2006). Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred. *Id.*

A court should accept as true the facts alleged in the complaint, and should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the nonmoving party. *Id.* However, a court need not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading. *Id.* Courts also need not accept as true conclusory, nonfactual assertions or legal conclusions. *Richards & O'Neil, LLP v. Conk*, 774 N.E.2d 540, 547 (Ind. Ct. App. 2002).

*Lei Shi v. Cecilia Yi*, 921 N.E.2d 31, 36–37 (Ind. Ct. App. 2010) (footnote omitted). "The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances." *Am. Dry Cleaning & Laundry v. State*, 725

N.E.2d 96, 98 (Ind. Ct. App. 2000). "Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record." *Id.*

## II. Overview of the Law Relating to Spoliation Claims in Indiana

Spoliation of evidence consists of "'[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting *Spoliation*, BLACK'S LAW DICTIONARY (7th ed. 1999)). "First-party spoliation refers to the spoliation of evidence by a party to the principal litigation." *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 188 (Ind. 2011) (citing *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 350 (Ind. 2005)). "Third-party spoliation refers to spoliation by a non-party." *Id.* (citing *Gribben*, 824 N.E.2d at 350).

In 1991, this court declined to recognize a third-party spoliation claim. *See Murphy v. Target Prods.*, 580 N.E.2d 687, 690 (Ind. Ct. App. 1991), *trans. denied*. Specifically, the court concluded that "in the absence of an independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant, the claim of negligent or intentional interference with a person's prospective or actual civil litigation by the spoliation of evidence is not and ought not be recognized in Indiana." *Id.*

In 1998, this court recognized a limited cause of action for third-party spoliation in *Thompson ex rel. Thompson v. Owensby*, 704 N.E.2d 134 (Ind. Ct. App. 1998), *trans. denied*. In *Thompson*, a young child was mauled by a dog that had broken free of a cable that had been restraining the dog to its owners' yard. 704 N.E.2d at 135. The child's parents sought compensation from the dog owners and their landlords. *Id.* The landlords' insurance provider took possession of the restraining cable but subsequently lost the cable. *Id.* Neither the insurance provider nor the child's parents had examined or tested the cable before it was lost. *Id.* The child's parents sued the insurance provider, claiming that the insurance provider had breached its duty to maintain the evidence. *Id.* On appeal, we considered whether any such duty existed. *Id.* at 136. Concluding that the insurance provider did have such a duty, we stated:

> A liability carrier like the Insurance Company is in a unique position among tort litigants. Using its experience, a carrier is able to adopt business practices that lead to resolution of claims at the lowest possible cost to the carrier. The claims-resolution practices thus benefit the carrier and its shareholders, and can benefit third party claimants and insureds so long as the carrier uses responsible, efficient practices. It is reasonable for the law to require that claims resolution practices be responsible, because the carrier has the unique experience and ability to structure its practices to avoid harm. If a carrier intentionally or negligently engages in a claims-resolution practice that breaches the standard of care established by law, a third-party claimant is justified in seeking to hold the carrier liable for damages arising from the breach.

*Id.* at 139–40.

In 2005, in *Gribben*, the Indiana Supreme Court declined to recognize a cause of action for first-party spoliation, concluding

> [n]otwithstanding the important considerations favoring the recognition of an independent tort of spoliation by parties to litigation, we are persuaded that these are minimized by existing remedies and outweighed by the attendant disadvantages. We thus determine the common law of Indiana to be that, if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, the plaintiff in the tort action does not have an additional independent cognizable claim against the tortfeasor for spoliation of evidence under Indiana law.

824 N.E.2d at 355. The Court recognized, however, that "[i]t may well be that the fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation and thus not subject to existing remedies and deterrence." *Id.*

In 2006, the Indiana Supreme Court considered the question of whether Indiana law recognized a tort claim for third-party spoliation, discussing both *Murphy* and *Thompson*. *See Glotzbach v. Froman*, 854 N.E.2d 337, 338–39 (Ind. 2006). In *Glotzbach*, the Court was faced with the question of whether an employee who had been injured in a workplace accident could bring a claim of third-party spoliation of evidence for the destruction of evidence. 854 N.E.2d at 337. In concluding that the employee could not, the Court held that

[t]he disadvantages we identified in first-party spoliation claims remain concerns as to third-party claims. Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit. The jury must somehow find all the elements of a product liability case, immediately determining whether a product defect caused the injury, as opposed to inadequate maintenance, or other intervening events. The jury would be asked to determine what the damages would have been had the evidence been produced and what the collectibility [sic] of these damages would have been. We think this exercise often could properly be described as "guesswork."

*Id.* at 341 (internal citation omitted). In reaching this conclusion, the Court recognized that while evidentiary inferences are not available as a remedy for or deterrent to third-party spoliation, "[m]any of the other remedies remain applicable." *Id.* For instance, the Court noted that

[c]riminal sanctions apply equally to third parties and first parties. Similarly, sanctions under the Indiana Rules of Professional Conduct are available if attorneys for the third party are involved in the misconduct. Courts also have the power to issue contempt sanctions against non-parties who frustrate the discovery process by suppressing or destroying evidence.

*Id.*

[14] In 2008, we rejected a claim for third-party spoliation of evidence in *American National Property & Casualty Co. v. Wilmoth*, 893 N.E.2d 1068 (Ind. Ct. App. 2008), *trans. denied*. The facts in *Wilmoth* indicate that on November 1, 2000, a home that was being lived in by Traci Wilmoth and Richard Rider and their

children burnt and the children and Rider died. 893 N.E.2d at 1069. "While fighting the fire, firefighters threw a couch and other items onto the front yard, where they remained for approximately six weeks." *Id.* at 1070. Eventually, Robert and Betty Bowers (collectively, the "Bowers"), who had owned the home in question, discarded the couch and other items. *Id.* The fire department ultimately concluded that the fire had been accidental and had been caused by an electrical space heater. *Id.* Wilmoth's expert, however, determined that the fire had started "because of electrical arcing from an air conditioner power cord in the area of the sofa." *Id.* (internal quotation omitted). Wilmoth eventually sued American National Property and Casualty Co. ("ANPAC"), which had insured the home, claiming that they had been damaged by spoliation of certain evidence, *i.e.*, the couch, and that the spoliation "was attributable to ANPAC." *Id.*

[15] Citing to *Thompson*, we recognized that

> [i]n the context of the loss of evidence by an insurance carrier, the relationship between the carrier and a third[-]party claimant may warrant recognition of a duty if the carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation.

*Wilmoth*, 893 N.E.2d at 1070. However, we concluded that "[t]he duty to preserve evidence has limits." *Id.* at 1071. In concluding that the plaintiffs could not succeed on their attempted spoliation claim, we noted that, unlike in *Thompson*, the insurance company never had possession, "much less exclusive possession," of the evidence and it was unforeseeable that the loss of the

evidence might interfere with a future claim as there was no indication that the evidence was in any way at fault for the fire. *Id.* As a matter of public policy, we further concluded that "[t]o find a duty in this case would require insurers to preserve any potentially relevant evidence available after any potentially covered event. Retention and safekeeping of that amount of physical evidence would be a practical impossibility in most situations." *Id.* at 1073.

[16] In 2017, in *Shirey v. Flenar*, 89 N.E.3d 1102, 1107 (Ind. Ct. App. 2017), we considered whether a patient had a common-law claim for spoliation of evidence against a doctor who had lost or destroyed her medical records "that he knew or should have known [were] relevant to [her] personal-injury claim relating to [a] car accident." In *Shirey*, we noted that "[t]his Court has not recognized any third-party spoliation claims since *Gribben*" but that "we did allow one such claim seven years before *Gribben*" in *Thompson*. 89 N.E.3d at 1107. In allowing Shirey's spoliation claim, we noted that Dr. Flenar had an "important relationship with Shirey," "was aware that Shirey wanted her medical records," and "had good reason to believe that she would be harmed if she did not receive them." *Id.* at 1108–09. We found that the public policy concerns identified in *Glotzbach* were not relevant to Shirey's case. *Id.* at 1110. We also found it notable that the *Glotzbach* Court did not criticize or disapprove of our decision in *Thompson*. *Id.* at 1111. As such, we concluded that "Dr. Flenar had an enforceable duty to preserve Shirey's medical records once she requested them from him and that the trial court erred by granting Dr. Flenar summary judgment on Shirey's spoliation claim." *Id.* More generally than the

specific instances discussed in *Thompson* and *Shirey*, however, the Indiana Supreme Court has held that "[m]ere ownership of potential evidence, even with knowledge of its relevance to litigation, does not suffice to establish a duty to maintain such evidence." *Glotzbach*, 854 N.E.2d at 341.

## III. Analysis

[17] We note that the instant matter does not come before us following summary judgment or a trial, but rather a dismissal pursuant to Indiana Trial Rule 12(B)(6). Again, Trial Rule 12(B)(6) allows for dismissal of a lawsuit for "[f]ailure to state a claim upon which relief can be granted." "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail*, 845 N.E.2d at 134. In reviewing a Trial Rule 12(B)(6) motion to dismiss, we accept as true the facts alleged in the complaint, consider the pleadings in the light most favorable to the plaintiff, and draw every reasonable inference in favor of the non-moving party. *Id.* Applying this standard to the case at issue, we do not consider the merits of the parties' arguments relating to Michaelis's ultimate potential liability but rather merely examine Safeco's complaint to determine whether Safeco had adequately pled a cause of action for which it *may* be entitled to relief.

## A.    Safeco's Third-Party Spoliation Claim

[18]    The parties agree that Indiana courts have recognized third-party spoliation claims under limited circumstances.  Safeco contends that it sufficiently pled its third-party spoliation claim to survive a Trial Rule 12(B)(6) dismissal.  For its part, Michaelis contends that the trial court correctly determined that the pleadings are insufficient to state a claim for which relief can be granted.

[19]    Before we turn to Safeco's pleadings, we look to the elements which a party must plead in a third-party spoliation claim:  duty, breach of said duty, and harm.  *See Thompson*, 704 N.E.2d at 140.  The question of whether one may recover on a claim of third-party spoliation will likely turn on the question of whether the plaintiff adequately pled that a duty to preserve the evidence existed as the questions of whether a breach, *i.e.*, the destruction of the evidence, occurred and whether the plaintiff suffered harm, *i.e.*, the loss of the evidence, tend to be fairly straightforward questions as the evidence in question is either available to the plaintiff or it is not.

[20]    With respect to duty, it stands to reason that a third party can only be found liable for the destruction of evidence when the third party owed a duty to preserve the evidence in question.  In determining whether a third party owes another a duty to refrain from destroying evidence, "we analyze (1) the relationship between the parties, (2) the reasonable foreseeability of the type of harm to the type of plaintiff at issue, and (3) the public policy promoted by recognizing an enforceable duty."  *Wilmoth*, 893 N.E.2d at 1070–71.  We have

recognized that the fact that a third party has taken possession or control of the evidence, *i.e.*, giving it the opportunity and ability to preserve the evidence, points in favor of finding a duty to maintain the evidence. *See Thompson*, 704 N.E.2d at 139 (providing that the Thompsons could pursue a third-party spoliation claim when the third-party "took possession of the evidence and lost it").

[21]     With respect to its third-party spoliation claim, Safeco alleged in its amended complaint as follows:

> 13. That on or about October 31, 2019, the Product failed, causing a fire at [Smith's] Property.
>
> 14. That on or about November 6, 2019, a preliminary scene exam was conducted; representatives for [Safeco], [Michaelis], and others were in attendance.
>
> 15. [That] on or about November 6, 2019, [Safeco's] representatives and consultants determined that the fire likely originated on the kitchen countertop, to the left of the sink, where the Product was located.
>
> 16. That on or about November 6, 2019, the entrances to the kitchen area were taped off with "caution tape," so the area could be preserved pending notice to the potentially responsible parties and scheduling of a joint scene exam.
>
> 17. That the need to preserve the kitchen was verbally communicated to [Michaelis] and its representatives, including Mr. Rick Smith.
>
> 18. That on or about November 6–7, 2019[,] representatives for [Michaelis] constructed a temporary structure to provide better

weather protection and tarping over the area of fire origin.

19. That between November 8, 2019 and January 15, 2020, [Michaelis] never requested and was never given permission to demolish the kitchen or discard the Product or other artifacts.

20. That on information and belief, sometime after December 2, 2019 and before January 15, 2020, [Michaelis] demolished the kitchen and discarded the Product and other artifacts.

**\*\*\*\***

34. At all relevant times, [Michaelis] had a duty to preserve the scene of the subject incident at the Property and to not remove and/or destroy any materials or items, including the Product, without express direction and/or consent.

35. Notwithstanding this duty, [Michaelis], by and through its agents, servants and employees, breached their duty by engaging in one or more of the following negligent acts or omissions:

> (a) Carelessly and negligently allowed, caused or failed to prevent the fire scene located at 6648 Marmont Cir., Indianapolis, Indiana from being demolished or otherwise modified, such that evidence necessary to Plaintiff's case was irreparably destroyed;
> (b) Carelessly and negligently discarded, demolished or destroyed evidence, including the Product and other artifacts, located 6648 Marmont Cir., Indianapolis, Indiana, knowing the evidence was being preserved as part of an ongoing investigation;
> (c) Carelessly and negligently modified, altered or demolished the fire scene located at 6648 Marmont Cir., Indianapolis, Indiana;
> (d) Carelessly and negligently destroyed or discarded evidence, including the Product, located at 6648

Marmont Cir., Indianapolis, Indiana; and

    (e)  Was otherwise careless and negligent.

36.  As a direct and proximate result of one or more of the preceding acts and/or omissions of [Michaelis], [Safeco's] ability to prove its claims against the [Principal Defendants] was and is substantially and irreparably impaired.

WHEREFORE, [Safeco] as Subrogee of [Smith], prays that judgment be entered against [Michaelis] in the amount of $511,861.46, plus costs of suit, and such other relief as this court deems proper and just.

Appellant's App. Vol. II pp. 31–32, 35–36.

[22]    Safeco's amended complaint alleges that Michaelis was informed of the need to preserve the evidence and took steps to preserve it before ultimately discarding or destroying it. Safeco has sufficiently alleged that such a duty existed. Safeco also alleged that Michaelis had breached its duty by discarding or destroying the evidence and that Safeco had been harmed by the destruction of the evidence. Safeco's amended complaint, therefore, contains the necessary allegations to potentially support a claim of third-party spoliation. Because Safeco pled a claim for which it could potentially be entitled to relief, we conclude that the trial court erred by granting Michaelis's Trial Rule 12(B)(6) motion to dismiss.

## B.   Safeco's Negligence Claim

[23]    We reach the same conclusion with regard to Safeco's negligence claim.

To prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by

allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. Absent a duty there can be no negligence or liability based upon the breach.

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016) (cleaned up).

[24] In asserting its negligence claim, Safeco incorporated the above-stated allegations relating to its third-party spoliation claim and further alleged as follows:

> 38. At all times relevant, [Michaelis] owed a duty to [Safeco] and others to exercise reasonable care and due caution in performing work at 6648 Marmont Cir., Indianapolis, Indiana, so as not to cause injury to persons or property.
>
> 39. Notwithstanding said duties, and in violation thereof, [Michaelis] committed one or more of the following negligent acts and/or omissions:
>
> > (a) Carelessly and negligently allowed, caused or failed to prevent the fire scene located at 6648 Marmont Cir., Indianapolis, Indiana from being demolished or otherwise modified, such that evidence necessary to [Safeco's] case was irreparably destroyed;
> > (b) Carelessly and negligently discarded, demolished or destroyed evidence, including the Product and other fire artifacts, located 6648 Marmont Cir., Indianapolis, Indiana, knowing the evidence was being preserved as part of an ongoing investigation;
> > (c) Carelessly and negligently modified, altered or demolished the fire scene located at 6648 Marmont

Cir., Indianapolis, Indiana;
(d) Carelessly and negligently destroyed or discarded evidence, including the Product, located at 6648 Marmont Cir., Indianapolis, Indiana; and
(e) Was otherwise careless and negligent.

40. As a direct and proximate result of one or more of the aforesaid careless and negligent acts and/or omissions of [Michaelis], [Safeco's] ability to prove its claims against the [Principal Defendants] was and is substantially and irreparably impaired.

41. That pursuant to the aforementioned policy of insurance, [Safeco] was required and did pay to or on behalf of [Smith's] damages in the amount of $510,861.46, that [Smith] incurred a $1,000.00 deductible, and [Safeco] is subrogated to the rights of [Smith].

WHEREFORE, [Safeco] as Subrogee of [Smith], prays that judgment be entered against [Michaelis] in the amount of $511,861.46, plus costs of suit, and such other relief as this court deems proper and just.

Appellant's App. Vol. II pp. 36–37.

[25] As we concluded above, Safeco sufficiently pled that Michaelis had owed it a duty, Michaelis had breached said duty, and Safeco had suffered harm as a result of the breach. While the question of whether Safeco will ultimately be entitled to recover from Michaelis is a question to be decided during a later stage of the litigation, Safeco's amended complaint contains the necessary allegations to support a negligence claim. Because Safeco pled a claim for

which it could be entitled to relief, we again conclude that the trial court erred by granting Michaelis's Trial Rule 12(B)(6) motion to dismiss.

[26] The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings.

May, J., and Mathias, J., concur.