FILED

Dec 21 2017, 11:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Thomas D. Blackburn
David A. Singleton
Blackburn & Green
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Mark W. Baeverstad
Ashley M. Gilbert-Johnson
Rothberg Logan & Warsco LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary (Jones) Shirey,<br>*Appellant-Defendant,*<br><br>v.<br><br>Rex Flenar, M.D.,<br>*Appellee-Plaintiff* | December 21, 2017<br><br>Court of Appeals Case No.<br>02A03-1704-MI-876<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Craig J. Bobay, Judge<br><br>Trial Court Cause No.<br>02D02-1608-MI-000837 |

**Vaidik, Chief Judge.**

# Case Summary

[1] After Mary Shirey was injured in a car accident, she sought treatment from Dr. Rex Flenar. A few weeks later, Shirey's lawyer asked Dr. Flenar for her medical records. Dr. Flenar failed to respond for several years before eventually indicating that the records were destroyed by his medical-records software provider. Shirey has sued Dr. Flenar, claiming that she has a private right of action under Indiana Code section 16-39-1-1, which requires a healthcare provider to supply a patient's medical records upon request by the patient. She also asserts that, to the extent Dr. Flenar lost or destroyed the records, she has a claim for third-party spoliation of evidence, because without the records she was unable to fully substantiate her personal-injury claim stemming from the accident. The trial court granted Dr. Flenar summary judgment on both claims, and Shirey appeals. She has failed to persuade us that our General Assembly intended to create a private cause of action for a violation of Section 16-39-1-1. However, we conclude that Dr. Flenar had a duty to preserve the records under the circumstances of this case and is therefore properly subject to a cause of action for spoliation. As such, we affirm in part, reverse in part, and remand this matter to the trial court for further proceedings.

# Facts and Procedural History

[2] Shirey filed her complaint against Dr. Flenar in August 2016. She alleged that she began treating as a patient of Dr. Flenar on March 24, 2013; that she was

injured in a car accident less than a week later, on March 30, "due to the negligence of a third party"; and that she "sought treatment thereafter" from Dr. Flenar. Appellant's App. Vol. II p. 14. She further claimed that she, "by counsel," requested her medical records and bills from Dr. Flenar on April 25, 2013; that she did not receive a response from Dr. Flenar; and that she and her lawyer made multiple follow-up requests over the next three years (the last on March 11, 2016), none of which Dr. Flenar responded to. *Id.* at 14-15.

[3] Shirey included two counts in her complaint. In Count I, she alleged that Dr. Flenar violated Section 16-39-1-1 (which we also call the "record-production statute"), which provides, in subsection (c), "On written request and reasonable notice, a provider shall supply to a patient the health records possessed by the provider concerning the patient." In Count II, she alleged in the alternative that Dr. Flenar "may no longer be in possession of the medical records because he lost or destroyed them." *Id.* at 16. She claimed, generally, that she "suffered injury by being refused access and use of her medical records and bills" and, more specifically, that she "suffered damages by being rendered incapable of completely documenting her injury claim for damages from her March 30, 2013 accident due to the lack of complete medical evidence[.]" *Id.* at 15.

[4] Dr. Flenar filed a motion for summary judgment in which he claimed that his medical-records software provider destroyed Shirey's records without his knowledge:

> In 2013, Dr. Flenar was practicing medicine as Kendallville Family Care Center, Inc., which was his private practice. Dr.

Flenar maintained electronic medical records with regard to each patient. In order to maintain these medical records, Dr. Flenar utilized an electronic medical records software program called "MyWay," which was developed by AllScripts. MyWay EMR software included the patient's history, clinical charting, ePrescribing, lab orders and results, and all other records that would have been contained in a patient's chart. In early 2014, Dr. Flenar was informed by AllScripts that it would no longer support the MyWay software and that he would need to purchase a new EMR software program from AllScripts. Since he had encountered very poor service from AllScripts with the MyWay software, he decided to use a different EMR software called Practice Fusion. MyWay was incompatible with the new software so he began using two different EMR's, Practice Fusion for creating and maintaining an EMR going forward, and MyWay to access old pat[i]ent records. Dr. Flenar joined a class action lawsuit against AllScripts for its decision to no longer support MyWay. He was notified in April or May of 2015 that the class action was settled and that he could continue to access the MyWay records for another year if he agreed to pay $1,000. Dr. Flenar signed up for that option but was never billed and in June, 2015, he was cut off from his access to his patient's records in MyWay. In July, 2015, Dr. Flenar closed his practice in Kendallville. After getting cut off from his access to the MyWay records, Dr. Flenar called AllScripts, but received no [cooperation]. He found an email address on the internet that was supposed to be used if he needed to contact AllScripts to obtain [] copies of his patient's records, but that did not work either. After multiple unsuccessful attempts to obtain Dr. Flenar's patients' medical records, he was informed that AllScripts destroyed all of his patients' records and that he will not be able to obtain a copy of Ms. Shirey's office chart. Dr. Flenar does not recall receiving any notice that AllScripts would destroy his patients' medical records.

*Id*. at 27-28 (citations omitted). Dr. Flenar did not explain why he failed to provide Shirey's records between April 2013 and June 2015, when he apparently still had access to them. Moreover, as the legal basis for his motion, Dr. Flenar did not disclaim responsibility for the loss of the records. Instead, he asserted that Shirey's lawsuit is one for medical malpractice and that Shirey was therefore required to present her claims to a medical review panel before taking them to court, pursuant to the Indiana Medical Malpractice Act. *See* Ind. Code § 34-18-8-4. The only evidence Dr. Flenar designated in support of his motion was Shirey's complaint and his own affidavit explaining what happened with Shirey's records.

In her response to Dr. Flenar's motion, Shirey argued that her suit is not governed by the Medical Malpractice Act "because she has not alleged any bodily injury arising out of malpractice and the substance of her claim is not within the scope of the Act." Appellant's App. Vol. II p. 50. She asserted that she has a private right of action for Dr. Flenar's violation of the record-production statute as well as a claim for third-party spoliation of evidence in that Dr. Flenar's actions "directly caused her to suffer damages through incomplete evidence in her principal claim." *Id*. at 59. Shirey did not designate any evidence other than the "pleadings that have been filed in this cause and are on file with the Court." *Id*. at 60.

In reply, Dr. Flenar abandoned his medical-malpractice theory and addressed the record-production statute and the issue of spoliation for the first time. He argued that Section 16-39-1-1 does not confer a private right of action.

Regarding spoliation, he maintained that "public policy weighs against recognizing a third-party spoliation claim in this matter" because "any alleged damages would be highly speculative" and Shirey "has not alleged bad faith by Dr. Flenar or alleged that he affirmatively acted to destroy evidence to avoid or lessen his liability." *Id*. at 66. Dr. Flenar did not designate any additional evidence with his reply.

[7] After a short hearing, the trial court issued an order granting Dr. Flenar's motion, largely incorporating his legal arguments on both issues.

[8] Shirey now appeals.

# Discussion and Decision

[9] Shirey contends that the trial court should not have granted Dr. Flenar summary judgment on either the statutory claim or the spoliation claim. "When reviewing summary judgment, we apply the same standard as the trial court: summary judgment is proper only when the designated evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Megenity v. Dunn*, 68 N.E.3d 1080, 1083 (Ind. 2017) (citing Ind. Trial Rule 56(C)). "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014).

# I. Private Right of Action

[10] Shirey first argues that she has a private right of action under the first sentence of Indiana Code section 16-39-1-1(c): "On written request and reasonable notice, a provider shall supply to a patient the health records possessed by the provider concerning the patient." Whether a statute confers a private right of action is a question of law that we review de novo. *Doe #1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 201 (Ind. 2017).

[11] As Shirey acknowledges, our General Assembly has not expressly created a private right of action for violations of the record-production statute. Therefore, we must examine the language of the statute to determine whether the legislature nonetheless intended to allow private actions. *See id.* at 202 (explaining that whether a private cause of action exists is "purely a question of legislative intent"). For three reasons, we do not find such an intent.

[12] First, from the outset, we must be reluctant to find an implied right of action. *Id.* Our General Assembly "often creates rights of action using clear language," so its omission of such language is evidence that it did not intend to create a private remedy. *See id.* (citing numerous statutes that expressly establish rights of action).

[13] Second, Title 16 includes its own enforcement mechanism. Specifically, Indiana Code section 16-19-3-18(b) provides that the Indiana State Department of Health "may bring an action to enforce this title[.]" We have held that this is "[t]he enforcement mechanism of [Title 16][.]" *HealthPort Techs., LLC v.*

*Garrison Law Firm, LLC*, 51 N.E.3d 1236, 1239 (Ind. Ct. App. 2016), *trans. denied*. According to our Supreme Court, "When a statute expressly provides one enforcement mechanism, courts may not engraft another." *Doe #1*, 81 N.E.3d at 204.

[14] And third, a holding that the record-production statute confers a private right of action would be seriously at odds with our Supreme Court's interpretation of the closely related record-**retention** statute, Indiana Code section 16-39-7-1. In *Howard Regional Health System v. Gordon*, 952 N.E.2d 182 (Ind. 2011), the Court held that no private right of action exists under that statute, which provides, in subsection (b), "A provider shall maintain the original health records or microfilms of the records for at least seven (7) years." Shirey offers no reason, and we can think of none, why the legislature would create a right of action against a health care provider who fails to produce records but not against a provider who fails to maintain records in the first place.

[15] Notwithstanding all that, Shirey emphasizes the following passage from our Supreme Court's decision in *LTV Steel Co. v. Griffin*: "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." 730 N.E.2d 1251, 1260 (Ind. 2000). Focusing on the word "and," Shirey reads this language to mean that if the statute at issue (1) was **not** designed to benefit the public in general, but rather specific individuals, or (2) does **not** include a comprehensive enforcement mechanism, a private right of action is permitted. Shirey contends that Section 16-39-1-1(c)—with its references to "a provider,"

"a patient," and "the patient"—was designed to benefit individual patients more so than the public at large and that this fact alone means that she has a private right of action, notwithstanding the existence of a statutory enforcement mechanism.[1]

[16] However, in more recent opinions, the Supreme Court has made clear that the passage from *LTV Steel* should not be read literally. In *Blanck v. Indiana Department of Correction*, the Court held that various prison-discipline statutes do not confer a private right of action even though they appeared to be designed primarily to benefit inmates. 829 N.E.2d 505, 509-11 (Ind. 2005). In *Gordon*, the Court did not even address whether the medical-record-retention statute was designed to benefit individual patients before concluding that it does not confer a private right of action. 952 N.E.2d at 186-88. And as already discussed, the Court said in *Doe #1* that "[w]hen a statute expressly provides one enforcement mechanism, courts may not engraft another"—apparently without regard to whether the statute was designed to benefit particular individuals. 81 N.E.2d at 204. Therefore, the fact that Indiana Code section

---

[1] Shirey asserts that Section 16-39-1-1 "is specifically titled, '**Right of Access**, written requests; effective duration,'" Appellant's Reply Br. p. 8 (emphasis in original), and that this "title" signals not only a right of access to medical records but the existence of a private cause of action to enforce that right of access. Shirey does not tell us what version of the Indiana Code she is referencing, but the legislature did not include this purported title in the public law that created Section 16-39-1-1, *see* P.L. 2-1993, § 22, or in any of the public laws that have amended the statute, *see* P.L. 40-1994, § 66; P.L. 102-1994, § 1; P.L. 2-1995, § 72; P.L. 108-1996, § 4; P.L. 157-2006, § 4. The heading appears to have been added by publishers after the legislature enacted the statutes. In any event, the legislature has declared that any headings it includes in a law "are not part of the law," "are intended for organizational purposes only," and "are not intended to affect the meaning, application or construction of the statute they precede." Ind. Code § 1-1-1-5(f).

16-39-1-1 was arguably designed to benefit individual patients does not alter our conclusion that the legislature did not intend to create a private right of action. We affirm the trial court's grant of summary judgment in favor of Dr. Flenar on that issue.

## II. Spoliation

[17] Shirey argues that even if she does not have a private right of action under Section 16-39-1-1, she has a valid common-law claim for spoliation of evidence. The latter claim is not simply a reframing of the former. While both claims ultimately arise from Dr. Flenar's failure to provide Shirey's medical records, they are distinguishable because the spoliation claim does not depend on a violation of the record-production statute (or, for that matter, the record-retention statute, Indiana Code section 16-39-7-1). Rather, it is an allegation that Dr. Flenar lost or destroyed evidence that he knew or should have known was relevant to Shirey's personal-injury claim relating to the car accident.

[18] Our Supreme Court held in *Gribben v. Wal-Mart Stores, Inc.* that Indiana law does not recognize a claim for "first-party" spoliation—the loss or destruction of evidence by a party to the principal litigation. 824 N.E.2d 349 (Ind. 2005). In that case, a person who sued a store after a fall wanted to add a claim that the store failed to preserve surveillance video. The Court explained that a variety of spoliation remedies are available to a party to litigation, such as "potent" discovery sanctions and an inference that the spoliated evidence was unfavorable to the party responsible. However, recognizing that such sanctions

are generally unavailable against a spoliator who is not a party to the underlying dispute, the Court explicitly left the door open to claims of "third-party" spoliation—the type of claim Shirey makes here. Specifically, the Court said: "It may well be that the fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation and thus not subject to existing remedies and deterrence." *Id*. at 355.

[19] This Court has not recognized any third-party spoliation claims since *Gribben*. However, we did allow one such claim seven years before *Gribben*. In *Thompson ex rel. Thompson v. Owensby*, 704 N.E.2d 134 (Ind. Ct. App. 1998), *trans. denied*, a young girl was mauled by a dog that broke free of a cable. The girl's parents sought compensation from the dog owners' landlords, prompting the landlords' liability insurer to conduct an investigation and to take possession of the cable. The insurer, however, lost the cable before it had been examined or tested. The parents then sued the insurer for negligent spoliation of evidence, alleging that the loss of the cable adversely affected their personal-injury action. The insurer filed a motion to dismiss, which the trial court granted. In reversing, we framed the issue as whether the insurance company had a duty to preserve the cable. To answer that question, we balanced the three duty factors identified by our Supreme Court in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991): (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public-policy concerns. We have applied the same analysis in more recent spoliation cases. *See Lyons v. Richmond Cmty. Sch. Corp.*,

990 N.E.2d 470 (Ind. Ct. App. 2013), *aff'd on reh'g*, 996 N.E.2d 1280 (Ind. Ct. App. 2013), *summ. aff'd in relevant part*, 19 N.E.3d 254 (Ind. 2014); *Am. Nat'l Prop. & Cas. Co. v. Wilmoth*, 893 N.E.2d 1068 (Ind. Ct. App. 2008), *trans. denied*.

[20] Balancing the *Webb* factors in this case, we hold that the trial court erred by concluding that Dr. Flenar did not have a duty to preserve Shirey's medical records.[2]

## A. Relationship

[21] Regarding the first factor, Dr. Flenar's attorney conceded at oral argument that Dr. Flenar had an important relationship with Shirey. According to Shirey's complaint, she became a patient of Dr. Flenar on March 24, 2013, and she sought treatment from him after the car accident a week later. Dr. Flenar had a vital relationship with Shirey not only because he was responsible for her care but also as the presumptive safekeeper of the records generated in relation to that care. *See Gordon*, 952 N.E.2d at 186 (explaining that maintenance of health records is "closely entwined with health care" and "a part of what patients expect from health care providers").

---

[2] Notably, Shirey does not argue that Indiana Code section 16-39-7-1, the record-retention statute we addressed earlier, establishes the duty required for a spoliation claim, even though it specifically requires providers to maintain records for seven years. In *Glotzbach v. Froman*, our Supreme Court hinted that such a statute might be sufficient to create a duty to preserve. 854 N.E.2d 337, 340 (Ind. 2006) (discussing *Bondu v. Gurvich*, 473 So. 2d 1307 (Fla. Ct. App. 1984)). As discussed above, however, the Court has more recently held in *Gordon* that a violation of the record-retention statute cannot be the basis for a private cause of action. 952 N.E.2d at 187. Presumably, Shirey is concerned that basing a spoliation claim on the record-retention statute would seem like an attempt to skirt that holding.

# B. Foreseeability

[22] As for the second factor, the harm alleged by Shirey was reasonably foreseeable by Dr. Flenar. Recently, our Supreme Court adopted this Court's holding that the foreseeability component of the duty inquiry requires a "general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 390 (Ind. 2016) (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996), *trans. denied*)). In *Goodwin*, three people who were shot inside a bar by another customer sued the bar for failing to provide adequate security. In deciding the scope of the bar's duty to the victims, the Court framed the foreseeability question as whether "bar owners routinely contemplate that one bar patron might suddenly shoot another." *Id*. at 394. The Court held that they do not. *Id*.

[23] Here, we see the issue, generally stated, as whether it is reasonably foreseeable to a healthcare provider that a patient who requests her medical records will suffer harm if she does not receive them. We conclude that it most definitely is. A patient's request for records puts a healthcare provider on notice that the patient needs the records for some reason—perhaps current or future medical care, employment, life insurance, or, as here, legal—which in turn puts the provider on notice that the patient could be worse off without them. *See generally Glotzbach v. Froman*, 854 N.E.2d 337, 340 (Ind. 2006) (observing that "an explicit written request from the employee's attorney to preserve the evidence" supports recognition of a spoliation claim).

Dr. Flenar points out that Shirey, in responding to the motion for summary judgment, did not designate any evidence that supports her allegation that she requested her records from Dr. Flenar. He asserts that a plaintiff opposing such a motion "may not rest upon his pleadings but must set forth specific facts, by affidavit or otherwise, which demonstrates that there is a genuine issue for trial." Appellee's Br. p. 8. But a plaintiff's burden to designate specific evidence is triggered only after the defendant designates his own evidence to negate the allegations in question. *See*, *e.g., McDonald v. Lattire*, 844 N.E.2d 206, 210 (Ind. Ct. App. 2006). Here, Dr. Flenar failed to do so. The only evidence he designated was his affidavit explaining how he eventually lost Shirey's records. In that affidavit, Dr. Flenar did not deny Shirey's claim that her attorney requested her records a few weeks after the accident. Because Dr. Flenar did not designate any evidence to negate this allegation, we must accept it as true. *See id*. at 212. And because Dr. Flenar was aware that Shirey wanted her medical records, he had good reason to believe that she would be harmed if she did not receive them.

## C. Public Policy

Dr. Flenar begins and ends his challenge to Shirey's spoliation claim by discussing public-policy concerns. He relies heavily on *Glotzbach*, 854 N.E.2d 337, where our Supreme Court ordered the dismissal of a third-party spoliation claim. In that case, a man was working with an electric pump when there was an explosion, and he suffered fatal burns. His employer removed its equipment and debris from the explosion site and disposed of it. The employee's estate

brought a product-liability claim against the manufacturer of the pump and later added a spoliation claim against the employer. The trial court denied the employer's motion to dismiss the spoliation claim, but our Supreme Court reversed. *Id*. at 339.

[26] In doing so, the Court placed the greatest weight on the public-policy considerations. The Court identified some characteristics that all spoliation claims have in common. First, there are options other than a tort action to deter or remedy spoliation: criminal sanctions (e.g., perjury or obstruction of justice), sanctions under the Indiana Rules of Professional Conduct "if attorneys for the third party are involved in the misconduct," and contempt sanctions against "non-parties who frustrate the discovery process by suppressing or destroying evidence." *Id*. at 341. Second, "Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit." *Id*. "The jury would be asked to determine what the damages would have been had the evidence been produced and what the collectibility of these damages would have been. We think this exercise often could properly be described as 'guesswork.'" *Id*. (quoting *Petrik v. Monarch Printing Corp.*, 501 N.E.2d 1312, 1320 (Ill. App. Ct. 1986)).

[27] The Court also addressed several matters specific to the case before it. It noted that "the employee is entitled to worker's compensation, and permitting claims of spoliation by the employer would open the door to satellite litigation against the employer that the WCA [Worker's Compensation Act] is designed to

foreclose." *Id*; *see also* Ind. Code § 22-3-2-6 (providing that WCA is exclusive remedy available to employees for accidental personal injury arising out of and in course of employment). The Court added, "Perhaps most significantly, the employer is entitled to recover some of its worker compensation benefits if the employee can establish a product liability claim," so "[i]t is in the employer's interest to preserve evidence that may aid in pursuing these subrogation rights against the manufacturer." *Glotzbach*, 854 N.E.2d at 341 (citing Ind. Code § 22-3-2-13). Finally, the Court explained that recognizing a duty to preserve in the case would "raise[] operational issues for the employer. Without a strong showing of need, we should not impose an obligation to retain useless equipment indefinitely or to refrain from repairing equipment necessary to conduct the employer's business." *Id*. at 341-42. In the end, the Court carefully limited its holding to the circumstances of the case: "We hold that an employee whose injuries are covered by the Worker's Compensation Act has no claim against the employer for spoliation of evidence related to that incident." *Id*. at 337.

[28] Dr. Flenar makes no argument that the alternative sanctions discussed in *Glotzbach*—criminal charges, professional misconduct charges against an attorney, and discovery sanctions—would be of any value in this case. It is highly unlikely that Dr. Flenar would be charged with a crime, even if it turned out that he intentionally destroyed the records. Moreover, there is no indication that any attorneys were involved in the destruction of the records. Nor is there any indication that the destruction of the records frustrated any

"discovery process"—as far as we know, there was never any court case relating to the underlying personal-injury claim in which discovery could have even been conducted.

Instead, Dr. Flenar focuses on the potential for speculation in the determination of damages. He asserts:

> Any alleged damages in this matter would be highly speculative, just as the Court noted in *Glotzbach*. In order to prove damages, Shirey would have to prove that she was entitled to damages in her personal injury lawsuit, that Dr. Flenar's medical records would have increased her damages award or settlement, and the collectability of the increased amount. Determining the difference in recovery between what [Shirey] will recover in settlement and what she may have recovered if she had additional medical records is highly speculative and amounts to guesswork.

Appellee's Br. pp. 15-16. We share Dr. Flenar's concern, but only to an extent. Speculation regarding damages is a worry in every spoliation case, since every spoliation case, by definition, involves missing evidence. But if our Supreme Court found this fact dispositive, it easily could have foreclosed third-party spoliation claims entirely, in either *Gribben* or *Glotzbach*. Because it did not, we treat the difficulty of determining damages as just one relevant factor.

Dr. Flenar also contends that public policy weighs against allowing Shirey's claim because she "has not alleged bad faith by Dr. Flenar or alleged that he affirmatively acted to destroy evidence to avoid or lessen his liability." *Id.* at

16.  We fail to see how this favors Dr. Flenar.  In *Thompson*, the only case in which we have recognized a spoliation claim, there were no allegations of bad faith or intentional wrongdoing.  In fact, we specifically noted that "the Thompsons sued the Insurance Company **for negligence**."  *Thompson*, 704 N.E.2d at 136 (emphasis added).

[31]  As for the other policy considerations identified in *Glotzbach*, we agree with Shirey that none of them are relevant here.  This case does not involve worker's compensation, so the exclusivity and subrogation provisions of the Worker's Compensation Act are not implicated.  *See Glotzbach*, 854 N.E.2d at 341.  Furthermore, recognizing a duty to preserve in this situation would not impose any new burden or obligation on doctors, since they generally maintain medical records anyway.  *See id*. at 342 ("Without a strong showing of need, we should not impose an obligation to retain useless equipment indefinitely or to refrain from repairing equipment necessary to conduct the employer's business.").  Finally, we think it noteworthy that the *Glotzbach* Court did not criticize or disapprove our decision to allow a spoliation claim in *Thompson*.  And in *Thompson*, we emphasized that a policy of accountability "undergirds Indiana's common law tort doctrine."  704 N.E.2d at 139.  To preclude Shirey's claim at this early stage of the litigation "would be to ignore" that policy.  *See id*.

[32]  In sum, we conclude that all three *Webb* factors favor Shirey.  We therefore hold that Dr. Flenar had an enforceable duty to preserve Shirey's medical records once she requested them from him and that the trial court erred by granting Dr. Flenar summary judgment on Shirey's spoliation claim.  As with

any negligence case, there are other elements beyond duty—namely, breach, proximate cause, and damages. But those issues are beyond the scope of Dr. Flenar's motion for summary judgment. In the trial court, Dr. Flenar did not address spoliation until his reply brief, and even then his argument was limited to three paragraphs. He said little about the particulars of Shirey's claim, focusing instead on general public-policy arguments. And the only evidence he designated—his own affidavit about his struggles with his software provider—is insufficient to negate a spoliation claim as a matter of law. Given the narrow scope of Dr. Flenar's argument, as well as our general preference for letting even marginal cases proceed to trial, *see Hughley*, 15 N.E.3d at 1004, we will allow Shirey's spoliation claim to proceed.

[33] Affirmed in part, reversed in part, and remanded.

Baker, J., concurs with opinion.

Crone, J., concurs with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary (Jones) Shirey,<br>*Appellant-Defendant,*<br><br>v.<br><br>Rex Flenar, M.D.,<br>*Appellee-Plaintiff* | December 21, 2017<br><br>Court of Appeals Case No.<br>02A03-1704-MI-876<br><br>Appeal from the Allen Superior Court<br><br>The Honorable Craig J. Bobay, Judge<br><br>Trial Court Cause No.<br>02D02-1608-MI-837 |

**Baker, Judge, concurring.**

I am compelled to concur, though I do so with great dissatisfaction. While I acknowledge that we are bound to abide by our Supreme Court's ruling in *Gordon*, I take the opportunity to respectfully disagree with the holding in that case.

In my view, the doctor-patient relationship has always borne a common law duty in the doctor to retain her patients' medical records and, concomitantly, to produce them when asked. While the doctor maintains, updates, and stores

those records, it cannot be denied that, at the end of the day, they belong—or at least partially belong—to the patient.

[3]     Indeed, our General Assembly has acknowledged and codified this duty by enacting Indiana Code section 16-39-1-1(c).  In so doing, the legislature confirmed that the public policy of this State is to protect the right of patients to have access to their medical records.  It defies logic to conclude that by giving the Department of Health the power to enforce this right, the legislature also extinguished our common law power, as citizens, to enforce it for ourselves. To conclude on the one hand that the General Assembly acknowledged and protected this right and, on the other, that it dramatically curtailed it, is to ascribe a lack of reason to our legislators that I believe is unwarranted.

[4]     If a doctor decided to have a bonfire with her patients' medical records—or, in this day and age, if she decided to terminate her relationship with the company responsible for online maintenance of those records, knowing that such termination would lead to the deletion of the records—public policy would surely dictate that her patients would have a right to recover for those actions. While there is no evidence of knowing malfeasance in the case at hand, under *Gordon*, the result would be the same in either situation.

[5]     And that result, as acknowledged by Judge Crone, is no result at all.  Because if the Department of Health is the only entity with the right to enforce Title 16, to the exclusion of individual citizens, and the right that the Department would be enforcing in this case is the right to have one's health records supplied upon

request, if those records are simply gone, then there is nothing to be done. Under *Gordon*, there is simply *no consequence whatsoever* if a doctor loses her patients' medical records, whether by carelessness, malfeasance, or circumstance. I simply cannot countenance such a result. I do not believe that this furthers the public policy of Indiana, either from the perspective of the citizens or the General Assembly.

[6] To tell the citizens of this State that their physicians are required to maintain their medical records, but that there is no consequence for a failure to do so— even when that failure results in financial or health-related consequences to patients—is to make the requirement wholly meaningless. I encourage our Supreme Court to reconsider the *Gordon* holding. But in the meantime, as I am bound to abide by it, I reluctantly concur with the majority.

| | |
|---|---|
| Mary (Jones) Shirey, | December 21, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 02A03-1704-MI-876 |
| v. | Appeal from the Allen Superior Court |
| Rex Flenar, M.D., | The Honorable Craig J. Bobay, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 02D02-1608-MI-837 |

**Crone, Judge, concurring.**

I fully concur as to issue II. I also concur as to issue I, but only reluctantly, and only because we are bound by our supreme court's restrictive approach to recognizing statutorily created private rights of action. *See Gordon*, 952 N.E.2d at 186-88 (finding no private right of action under record-retention statute); *see also Doe #1*, 81 N.E.3d at 202-04 (finding no private right of action under statute prohibiting Department of Child Services from identifying reporters of child abuse). As noted above, our supreme court has said that "[w]hen a statute expressly provides one enforcement mechanism, courts may not engraft

another." *Doe #1*, 81 N.E.3d at 204. Indiana Code Section 16-19-3-18(b) provides that the State Department of Health "may bring an action to enforce" Title 16, which includes the record-production statute, and that "[t]he court in such an action has jurisdiction to compel or enforce the provisions of this title by injunction." An enforcement action would be futile in cases like this one, where the medical records at issue have been destroyed. Were it not for our supreme court's holding in *Gordon*, I would be inclined to hold that Shirey has a private right of action against Dr. Flenar under the record-production statute, which was designed primarily to protect individual patients and, at least in this situation, is incapable of being enforced by the State Department of Health.