

FILED
Jun 23 2025, 1:37 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court


IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-CT-158

## Chris A. Kelly,
*Appellant*

–v–

## Indiana Bureau of Motor Vehicles,
*Appellee*

Argued: March 6, 2025 | Decided: June 23, 2025

Appeal from the Marion Superior Court
No. 49D06-2301-CT-3437
The Honorable Kurt M. Eisgruber, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 23A-CT-2799

### Opinion by Chief Justice Rush

Justices Massa and Molter concur.
Justice Slaughter concurs with separate opinion.
Justice Goff dissents with separate opinion.

**Rush, Chief Justice.**

Hoosiers rely on the Bureau of Motor Vehicles (BMV) to ensure that their driving privileges are accurately recorded, and they expect it to correct errors that are brought to its attention. Erroneous driving records can lead to unwarranted traffic stops, loss of employment, and financial harm. Despite this reliance and these concerns, this case requires us to determine whether the Legislature intended to confer on Indiana's more than 4.5 million licensed drivers a right to sue the BMV when damages allegedly result from inaccurate records. Though the Legislature often enacts statutes imposing duties on private persons and governmental entities alike, we recognize a private right of action only when a statute was intended to create one. And we will not infer such intent if a statute contains an independent enforcement mechanism or primarily protects the public at large.

Here, a driver sued the BMV for damages resulting from allegedly incorrect records that showed his license was suspended. The BMV moved to dismiss the driver's claim, asserting that the statutes on which the driver relied did not create a private right of action, and thus the claim failed as a matter of law. The trial court granted the motion.

We affirm. The Legislature has created the material error review process to correct inaccurate driving records—without awarding damages. And even when this enforcement mechanism does not apply, judicial review of BMV actions is available under the Administrative Orders and Procedures Act. Additionally, while the BMV has a statutory duty to maintain driving records, this duty primarily helps regulate drivers in the interest of public safety. For these reasons, we decline to infer a private right of action to seek damages. We also hold that the driver has failed to show that the BMV owes him a common-law duty to keep accurate driving records. As a result, the driver has failed to allege facts showing a legally actionable injury has occurred.

## Facts and Procedural History

In August 2020, an Indianapolis police officer pulled Chris Kelly over for two "minor traffic infractions," leading to the suspension of his driver's license. About three months later, Kelly met with a prosecutor who, according to Kelly, sent electronic SR16's—court forms used to notify the BMV of various issues involving a driver who has violated a motor vehicle law—to the BMV to remove the infractions and Kelly's failure to pay fines. But in January 2021, police pulled Kelly over for driving on a suspended license. Kelly then called the prosecutor, who "requested that SR16's be retransmitted" to the BMV. Unfortunately, Kelly's license was still suspended in March, which he alleges caused him to lose a sales job he was interviewing for. And police pulled him over yet again in May for driving on a suspended license. Kelly claims he spent over $1,000 on traffic tickets and retrieving his car from a tow yard. He also claims he wrote, emailed, called, and visited the BMV, and that despite acknowledging its error, the BMV failed to correct it.

So, in January 2023, Kelly sued the BMV for negligently failing to correct his driving record, and he demanded costs, damages, and interest. The BMV denied it was negligent and then moved to dismiss Kelly's claim under Indiana Trial Rule 12(B)(6), asserting that he had "no private cause of action." The trial court summarily granted this motion and dismissed the complaint without prejudice.

The Court of Appeals reversed, finding that Kelly had sufficiently alleged a common-law negligence claim. *Kelly v. Ind. Bureau of Motor Vehicles*, 234 N.E.3d 222, 227–28, 230 (Ind. Ct. App. 2024). It also held that Indiana Code section 9-14-12-3, a statute requiring the BMV to maintain individuals' driving records, conferred on Kelly a private right of action. *Id.* at 228–29. On rehearing, the panel struck a footnote that discussed negligence per se but otherwise affirmed its original opinion. *Kelly v. Ind. Bureau of Motor Vehicles*, 238 N.E.3d 713, 714 & n.1 (Ind. Ct. App. 2024).

The BMV petitioned for transfer, which we now grant, thereby vacating the Court of Appeals' opinions. Ind. Appellate Rule 58(A).

# Standard of Review

We review a trial court's decision on a Trial Rule 12(B)(6) motion de novo. *Residences at Ivy Quad Unit Owners Ass'n v. Ivy Quad Dev., LLC*, 179 N.E.3d 977, 981 (Ind. 2022). Taking the facts alleged as true and viewing all inferences in the light most favorable to the nonmovant, we ask whether a legally actionable injury has occurred. *Id.* We also determine de novo whether a statute confers a private right of action and whether the common law imposes an actionable duty. *Doe #1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 201 (Ind. 2017).

# Discussion and Decision

Hoosiers rely on the BMV to ensure their driving privileges are accurately recorded, and they expect the BMV to correct errors brought to its attention. Inaccurate driving records can otherwise lead to unwarranted traffic stops, loss of employment, and financial harm—all of which Kelly allegedly experienced.

This appeal involves two questions: whether Indiana Code article 9-14, specifically Section 9-14-12-3 (the "Driving Records Statute"), confers on Kelly a private right of action allowing him to sue the BMV for damages; and whether the common law imposes an actionable duty on the BMV to exercise due care in maintaining Kelly's driving record. Our answers to these questions are framed by well-settled caselaw.

Determining whether a statute creates a private right of action is "purely a question of legislative intent, not judicial preference." *Doe #1*, 81 N.E.3d at 202. We ask whether a statute indicates expressly or implicitly that the Legislature intended to create a private right of action. *Id.* In *Doe #1*, we recognized the general rule that when a statute does not expressly provide a private right of action, we will not usually infer one if the statute "contains an independent enforcement mechanism" and "primarily protects the public at large." *Id.* Indeed, either consideration alone is dispositive. *See id.* at 202, 204; *see also Shirey v. Flenar*, 89 N.E.3d 1102, 1105–07 (Ind. Ct. App. 2017). Additionally, when we consider

whether to recognize a common-law duty for the first time, we often apply the three-part *Webb* test by balancing the parties' relationship, the foreseeability of harm, and public policy. *Doe #1*, 81 N.E.3d at 206–07 (citing *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991), *disapproved on other grounds by Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016)); *K.G. ex rel. Ruch v. Smith*, 178 N.E.3d 300, 311 (Ind. 2021).

Applying these principles here, we hold that the Legislature did not intend the Driving Records Statute, or any other statute Kelly cites, to create a private right of action against the BMV. Rather, the Legislature created the material error review process as an independent enforcement mechanism to correct driving records. Ind. Code §§ 9-33-1-1 to -2-5. And even assuming that process doesn't apply here, the Administrative Orders and Procedures Act (AOPA) provides for judicial review of the BMV's actions. *Id.* §§ 4-21.5-2-5(18), -5-1. Moreover, the Driving Records Statute primarily protects the public at large from individuals who do not have driving privileges. We also hold that Kelly has failed to establish the BMV owes him a common-law duty to maintain accurate records. For these reasons, we affirm the trial court's dismissal of his complaint.

# I. The Legislature has not created a private right of action for individuals to seek damages stemming from inaccurate BMV recordkeeping.

The Legislature "often creates rights of action using clear language." *Doe #1*, 81 N.E.3d at 202. Just a few years ago, we identified twenty-eight examples, *id.* at 202 n.1, and more have been created since then.[1] Typically, statutes creating rights of action indicate that a person "may recover" damages, "may bring a civil action," or "is liable" to another. *See,*

---

[1] *See, e.g.,* I.C. § 16-32-5-7(a) (anatomical gifts and transplants); *id.* § 24-5-13.1-25 (motor vehicles converted to serve accessibility); *id.* § 26-3-8-11.5(b) (self-storage owners' costs and expenses); *id.* § 32-34-1.5-51 (unclaimed property); *id.* § 34-21.5-3-2(a) (nonconsensual pornography); *id.* § 35-46-10-5(a) (damages resulting from offenses relating to critical infrastructure).

*e.g.*, I.C. §§ 6-1.1-35-12 (unauthorized disclosure of confidential financial information), 24-4-5-7 (violations of cloth product trademarks), 24-5-13.5-13(a) (buyback vehicle disclosures). We are therefore reluctant to infer implicit intent when the Legislature has not spoken plainly. *Doe #1*, 81 N.E.3d at 202.

Applying this well-settled standard here, we decline to infer that the Legislature implicitly created a private right of action for drivers to seek damages that stem from inaccurate BMV records. Statutes provide independent mechanisms to correct BMV recordkeeping errors, and the Driving Records Statute primarily protects the public at large.

## A. The Legislature has provided independent enforcement mechanisms to correct BMV recordkeeping errors through the material error review process and AOPA.

When a statute "expressly provides one enforcement mechanism," we will not "engraft another." *Id.* at 204. Relevant here, the material error review process enables individuals to correct certain enumerated BMV actions, including those based on court orders. I.C. §§ 9-33-1-1 to -2-5. But even if this enforcement mechanism were unavailable to Kelly, the BMV's alleged errors would still be reviewable under AOPA. *Id.* §§ 4-21.5-2-5(18), -5-1. Because the Legislature has provided these mechanisms, we will not engraft an implicit private right of action onto the Driving Records Statute or the other statutes Kelly cites.

The material error review statutes describe the process for notifying the BMV of a material error in a driving record and apply to "[a]ctions taken under a court order." *Id.* § 9-33-1-1(1). The review process begins with a person notifying the BMV of its supposed error in writing. *Id.* § -2-1(a). The remedy is generally limited to correcting the BMV's error and removing any suspension. *Id.* § -1(c). If unsatisfied with the BMV's response, the person may then seek judicial review. *Id.* §§ -1(e), -3. The BMV is not liable for any court costs and the statutes do not mention damages. *Id.* § -5; *cf. id.* § 22-9-1-6(j)(1) (enabling the Civil Rights Commission to "restore the complainant's losses" in an administrative

proceeding). However, an individual's costs are refundable in certain circumstances, *id.* § 9-33-2-4(e), as are BMV fees charged and paid in error, *id.* § -3-1(a)(2), (b). And any BMV actions subject to material error review are exempt from AOPA. *Id.* § 4-21.5-2-5(18).

In the BMV's view, the material error review process applies to both court-ordered and administrative suspensions. And we agree that the errors alleged by Kelly appear to be subject to material error review. Given the procedural posture of this case, we accept as true Kelly's allegation that the BMV failed to act on the SR16 forms sent on his behalf. An SR16 is a form on which courts provide the BMV with abstracts of judgments on various issues involving a driver who has violated a motor vehicle law. *State v. Reinhart*, 112 N.E.3d 705, 714 n.8 (Ind. 2018); *What are some common suspension and reinstatement forms?*, https://faqs.in.gov/hc/en-us/articles/115005236988-What-are-some-common-suspension-and-reinstatement-forms [https://perma.cc/N5S6-LTS6]. Kelly's references to SR16s suggest he is complaining, in substance, about an allegedly erroneous suspension the BMV imposed "under a court order," which would render material error review applicable. I.C. § 9-33-1-1(1).

But even if the BMV's alleged errors were not subject to material error review, they would still be judicially reviewable under AOPA. That is because AOPA "establishes the exclusive means for judicial review of an agency action," unless an exception applies. *Id.* § 4-21.5-5-1. And the only BMV-related exceptions other than actions subject to material error review are those that concern dishonored checks. *Id.* § -2-5(13), (18). It follows that AOPA applies to all other BMV actions. *Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 385–86 (Ind. Ct. App. 2017) (explaining that either material error review or AOPA applied to the BMV's denial of a license renewal). Under AOPA, courts may review final agency actions once administrative remedies have been exhausted. I.C. § 4-21.5-5-2(b). But like the material error review process, AOPA provides no remedy for damages. *Ind. Dep't of Env't Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 475 (Ind. 2008), *corrected on reh'g*, 903 N.E.2d 471 (Ind. 2009). Instead, a court may "set aside an agency action" and either remand for further proceedings or "compel agency action that has been unreasonably delayed or unlawfully withheld." I.C. § 4-21.5-5-15.

Because the Legislature allows drivers like Kelly to correct inaccurate BMV records through material error review and subsequent judicial review—or failing that, through judicial review under AOPA—we will not interpret the Driving Records Statute or related statutes as implicitly creating a private right of action.[2] Just as we defer to the Legislature's selection of an independent enforcement mechanism, "even if only an infraction," *Doe #1*, 81 N.E.3d at 204, we defer to the Legislature's decision to provide only for administrative and judicial review with the goal of correcting an agency's erroneous actions.

## B. The Driving Records Statute primarily protects the public at large.

Although the Legislature's provision of independent enforcement mechanisms is dispositive, we also conclude that the Driving Records Statute primarily protects the public at large, not individual drivers. For this alternative reason, Kelly lacks a private right of action.

Kelly identifies several relevant statutes in Article 9-14 that he claims impose on the BMV "a specific duty to maintain accurate driving records." He points to Section 9-14-8-2(a), which requires the BMV to maintain records under Chapter 9-14-12, and Section 9-14-12-2(4), which requires the BMV to maintain records under the Driving Records Statute. The Driving Records Statute is the critical statute for our analysis. It provides, "For each individual licensed by the bureau to operate a motor vehicle," the BMV "shall create and maintain a driving record." I.C. § 9-14-12-3(a). And each record must contain certain information: convictions for moving violations or operating without financial responsibility; administrative penalties; suspensions, revocations, or reinstatements of the individual's driving privileges, license, or permit; entries concerning

---

[2] This is not to say AOPA forecloses tort claims against agencies. Governmental entities are generally liable in tort for legally actionable injuries, although they may invoke a variety of immunities under Indiana's Tort Claims Act. *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 136 (Ind. 2013).

certain mailings; and ignition interlock requirements. *Id.* Kelly focuses on the opening four words—"For each individual licensed"—as implying a private right of action to seek damages for the BMV's inaccurate recordkeeping. We disagree.

A statute that is "designed mainly for public benefit" implies no private right of action. *Doe #1*, 81 N.E.3d at 202. So we will not read a private right of action into a statute that provides merely "incidental benefits to a private party." *Id.* These principles apply here. Though we acknowledge a driver like Kelly benefits from the BMV accurately maintaining their driving record, the main purpose of the Driving Records Statute is to facilitate regulation of drivers in the interest of public safety. Records of individuals' convictions, penalties, suspensions, and revocations enable the BMV and police to protect the public by ensuring individuals who have lost their driving privileges do not drive. To that point, we have explained that driving privileges "may be withheld, suspended or revoked by the State for reasons involving public safety" and that the consequences for the affected individual, though substantial, are "merely *incidental*" to the Legislature's purposes. *Reinhart*, 112 N.E.3d at 714 (quoting *Schrefler v. State*, 660 N.E.2d 585, 587–88 (Ind. Ct. App. 1996)); *see also Owens v. State ex rel. VanNatta*, 382 N.E.2d 1312, 1317 (Ind. Ct. App. 1978); *Terpstra v. State*, 529 N.E.2d 839, 846–47 (Ind. Ct. App. 1988); *Hazelwood v. State*, 3 N.E.3d 39, 43 (Ind. Ct. App. 2014). Accordingly, the Driving Records Statute uses the word "individual" primarily because public safety and efficient administration require the BMV to keep a record of each individual driver's convictions, penalties, and suspensions.

Other provisions in and related to Chapter 9-14-12 likewise reflect that accurate recordkeeping by the BMV is designed to protect the public at large. For example, under Section 9-14-12-8, the BMV's information is available to help with notifying owners of vehicle defects and recalls, administering the Federal Selective Service System, and assisting law enforcement. I.C. § 9-14-12-8(c)(1), (4), (5). And the BMV's general duty to maintain records under Chapter 9-14-12 is mandated in a statute that also requires the BMV to "[p]rescribe and provide all forms necessary to carry out any laws or rules administered and enforced by the bureau" and to settle its accounts at the end of each year. *Id.* § -8-2(1), (3). Like

recordkeeping, creating available forms and settling accounts are quintessential public administration functions, reinforcing our conclusion that the Driving Records Statute serves primarily to protect the public.

All in all, both the existence of independent enforcement mechanisms and the public safety mission of the Driving Records Statute lead us to conclude Kelly has no private right of action. Although we acknowledge the very real damages that can flow from BMV errors, separation-of-powers principles prevent us from stepping into the Legislature's shoes and creating an actionable right "under the guise of statutory interpretation." *Doe #1*, 81 N.E.3d at 204. Kelly has therefore failed to show he suffered an injury that was legally actionable through a private right of action. We next consider whether he has set forth an actionable common-law negligence claim.

## II. Kelly has failed to establish that the BMV owes him a common-law duty to keep accurate records.

In the alternative, Kelly maintains he has a viable common-law negligence claim against the BMV because "governmental entities" generally "owe common law duties to use ordinary and reasonable care." But governmental entities do not owe a general duty of care to all persons in every circumstance. *See Putnam Cnty. Sheriff v. Price*, 954 N.E.2d 451, 455 (Ind. 2011). Rather, Kelly needed to either identify caselaw imposing on the BMV the particular duty to maintain accurate driving records, which he has not done. Or he needed to argue why we should recognize such a duty as a matter of first impression. When considering whether to recognize a new common-law duty, we generally apply a three-factor test. *Doe #1*, 81 N.E.3d at 206–07; *K.G.*, 178 N.E.3d at 311. But Kelly has not provided an analysis of any of those factors, so we conclude he has failed to establish the BMV owes him the new common-law duty he's alleged.

To be sure, as Kelly points out, we stated in *Benton v. City of Oakland City* that "all governmental units" are generally "bound, both directly and under the theory of respondeat superior, by the common law duty to use ordinary and reasonable care under the circumstances." 721 N.E.2d 224,

232–33 (Ind. 1999). But *Benton* did not reflect an all-encompassing concept of duty toward all persons in any circumstance. Instead, we adopted a presumption that governmental entities owe the same common-law duties as private persons, subject to three common-law immunities. *Id.* at 227, 230. And our holding in *Benton* relied only on the duty of care arising from governmental operation of recreational facilities—a duty well-recognized in the common law. *Id.* at 233 (collecting cases); *see also Price*, 954 N.E.2d at 455 (explaining that *Benton* contemplated duties arising from public maintenance and control of property). Thus, the statement Kelly cites from *Benton* does not imply the BMV owes him a general duty of care broad enough to encompass maintenance of his driving record. Rather, "[w]hether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law." *Webb*, 575 N.E.2d at 995. And when we are asked to identify a new common-law duty, the analysis usually turns on the parties' relationship, the foreseeability of harm, and public policy. *Id.*

Aside from citing to and quoting from *Benton*, Kelly's briefing offers no argument for imposing on the BMV a new common-law duty of care in maintaining an individual's driving record. And though Kelly's counsel addressed the foreseeability-of-harm factor at oral argument, he conceded he could not identify any case imposing on a governmental entity a common-law duty to maintain accurate records. *Cf. Florez v. Broward Sheriff's Off.*, 270 So.3d 417, 420 (Fla. Dist. Ct. App. 2019) (deeming it "well established that the government does not owe individual citizens a common law duty to convey accurate information or maintain accurate records"). The additional arguments made in the dissenting opinion, *post*, at 3, were not raised by Kelly.

We do not condone the BMV's alleged failings in this case. But as we have never recognized a common-law duty in these circumstances and Kelly has not established one exists under the *Webb* test, we decline to find such a duty here. Kelly has therefore failed to show he has a legally actionable common-law negligence claim.

# Conclusion

For the reasons explained above, we affirm the trial court's dismissal of Kelly's complaint.

Massa and Molter, JJ., concur.
Slaughter, J., concurs with separate opinion.
Goff, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT CHRIS A. KELLY
Daniel K. Burke
DKB Legal LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE INDIANA BUREAU OF MOTOR VEHICLES
Theodore E. Rokita
Attorney General of Indiana

Frances Barrow
Supervising Deputy Attorney General

Angela Sanchez
Chief Counsel of Appeals

Benjamin M.L. Jones
Section Chief, Civil Appeals
Indianapolis, Indiana

**Slaughter, J., concurring.**

The Court applies our precedent faithfully in holding that Chris Kelly does not have a private remedy against the bureau of motor vehicles. Thus, I concur in full with the Court's decision that Kelly's complaint does not state a claim upon which relief may be granted.

I write separately to suggest that in a future case we consider adopting a narrower, plain-statement rule when assessing whether the breach of a statutory duty gives rise to a private statutory remedy. Such a rule would still focus on whether the legislature has specified an intention to create a private remedy. But it would dispense with the need to examine whether a given statute is "designed mainly for public benefit" with only "incidental benefits to a private party." *Ante*, at 9 (quoting *Doe #1 v. Ind. Dep't of Child Servs.*, 81 N.E.3d 199, 202 (Ind. 2017)).

The problem with this "benefit" inquiry is that most statutes, including the one before us, confer both public and private benefits. As the Court notes, drivers like Kelly benefit "from the BMV accurately maintaining their driving record[s]". *Ibid*. Yet the public also benefits from an administrative system that regulates drivers "in the interest of public safety." *Ibid*. It is anyone's guess whether a statute conferring both public and private benefits was designed "mainly" to benefit the public and whether its private benefits are only "incidental". Applying this test in practice seldom yields a clear answer and invites judges to superimpose their own preferences over the legislature's design.

Judges are not mind readers or policymakers. Our job is to discern the meaning of what the legislature enacted based on a fair reading of the governing statute. I would begin with a presumption that a statute imposing a duty does not thereby create a private remedy for a breach of that duty. The legislature, of course, can overcome this default rule with a "plain statement" that it is creating (or recognizing there already exists) a private remedy.

The Indiana Code contains dozens of "plain statement" examples. As the Court observes, the legislature "often creates" express rights of action, *ante*, at 5–6, n.1 (quoting *Doe #1*, 81 N.E.3d at 202, and citing later-enacted

statutes, *id.* at 202 n.1), using various phrases to make its intent unmistakably clear, including: "may recover", Ind. Code § 9-22-3-36; "may bring a civil action", *id.* § 24-5-24-15(a); "[a]n action may be filed", *id.* § 5-14-1.5-7; "may be liable", *id.* § 32-36-1-10; "is civilly liable for", *id.* § 16-41-2-7; "has a private right of action", *id.* § 36-7-11-21(b). The litany of statutes expressly creating or recognizing a private remedy warrants the very reluctance the Court exercises today in declining to imply a remedy for Kelly.

A noted treatise adds another example of a plain statement recognizing a private remedy. Scalia and Garner consider a hypothetical statute that does not "explicitly create" a private remedy but expressly assumes one exists: "In any private suit for violation of this statute, the victorious plaintiff will be entitled to attorney's fees." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 316 (2012). The treatise authors (and I, too) would find a private remedy there because of the statute's "textual acknowledgment of the existence of a private action". *Ibid*.

Unlike the real or hypothetical statutes referenced above that confer or recognize a private remedy in no uncertain terms, the disputed statute here does no such thing. As the Court notes in Part I.A, the legislature made plain its intent not to create a private remedy when it created another route to enforce the statute. *Ante*, at 8. Thus, I agree with the Court's decision not to imply a remedy for Kelly.

\*　　\*　　\*

For these reasons, I concur fully with the Court's opinion that Kelly's complaint fails to state a claim upon which relief may be granted. In a future case, I would consider whether to adopt a "plain-statement rule" when addressing whether a statute imposing a duty creates a private remedy for the breach of that duty.

**Goff, J., dissenting.**

Chris Kelly sued the Bureau of Motor Vehicles (BMV) when the BMV failed to correct errors in his driving record after receiving multiple court forms, phone calls, letters, emails, and visits to the license branch notifying the BMV of the issue. Kelly sued the BMV for negligence and seeks compensatory damages after losing a job opportunity, getting multiple tickets, and having his car towed. The trial court granted the BMV's motion to dismiss, and this Court affirms, concluding that the BMV did not owe Kelly a duty to maintain accurate records. I disagree. The applicable statutes impose on the BMV a duty to maintain records for each "individual" licensed, suggesting it owes a duty to those individuals rather than the public in general. *See* Ind. Code § 9-14-12-3(a). And the statutes do not contain a comprehensive enforcement mechanism that would preclude a private right of action. The BMV also owes Kelly a duty under the common law to maintain accurate records. At this early stage, Kelly's action should proceed.

## I. The statutes establishing the BMV's duties provide a private right of action.

When a tort claim is premised upon violation of a duty imposed by statute, "the initial question to be determined by the court is whether the statute in question confers a private right of action." *Roberts v. Sankey*, 813 N.E.2d 1195, 1198 (Ind. Ct. App. 2004), *trans. denied*. To determine if the legislature intended a statute to establish a private right of action, we should consider "whether the statute is designed to protect the general public and whether the statutory scheme contains an enforcement mechanism or remedies for violations of the duty." *Id.* "As a general rule, a private party may not enforce rights under a statute designed to protect the public in general and containing a comprehensive enforcement mechanism." *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1260 (Ind. 2000).

Under the applicable statutes, the BMV has a duty to maintain driving records for "each *individual* licensed by the bureau," including the individual's convictions for moving traffic violations; any administrative

penalties; and any suspensions, revocations, or reinstatements. I.C. § 9-14-12-3(a) (emphasis added). When determining legislative intent, this Court gives a statute's words their "plain meaning." *ESPN, Inc. v. Univ. of Notre Dame*, 62 N.E.3d 1192, 1195 (Ind. 2016). By specifying that the BMV has a duty to maintain records for each "individual" licensed, the statutory duty imposed was designed to protect particular individuals. The Court concludes that the primary purpose of the statute is to protect the general public, but nearly every statute is designed to protect the public in some way, and I would look to the plain language of the statute which says the BMV's duty is to maintain records for each "individual."

Furthermore, the statutory scheme does not contain a comprehensive enforcement mechanism. The "material error" review process does not apply here. Under the material-error-review process, "[i]f a person determines that the records of the bureau contain a material error with respect to the person or the person's records, the person may notify the bureau in writing of the material error." I.C. § 9-33-2-1(a). The BMV then has thirty days to decide if a material error was made. A person "aggrieved" by the bureau's determination of a material error can seek judicial review of the determination. I.C. § 9-33-2-3(a). But the "material error" review process does not apply to Kelly's case. Indiana Code section 9-33-1-1 lists specific actions to which the material-error-review process applies. And none of these actions fall under Indiana Code article 9-14 (which describes the BMV's statutory duties). *See* I.C. § 9-33-1-1.

Although the SR16 form—the abstract of judgment forwarded to the BMV requesting to remove Kelly's infractions—is a "court order" to which the material-error-review process might apply, Kelly is not challenging the record itself. *See* I.C. § 9-33-1-1(1); I.C. §§ 9-33-2-1 to -5. He is alleging the BMV was negligent in failing to correct his record. The material-error-review process would apply to Kelly if he were simply seeking to fix his driver's record (as with an injunction), but instead he is seeking compensatory damages for lost job opportunities due to the BMV's negligence. Therefore, the material-error-review process does not apply.

The Court also concludes that even if the BMV's alleged errors were not subject to material-error review, they would still be reviewable under

AOPA, and AOPA provides no remedy for compensatory damages. *See Ind. Dep't of Env't Mgmt. v. Raybestos Prods. Co.*, 897 N.E.2d 469, 475 (Ind. 2008), *opinion corrected on reh'g*, 903 N.E.2d 471 (Ind. 2009). But AOPA does not foreclose tort claims against agencies. *See F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 136 (Ind. 2013). And Kelly's claim is a tort claim. He alleges that the BMV was negligent in failing to maintain his records and seeks compensatory damages for the harm it caused him.

## II. The BMV owes Kelly a duty under the common law to maintain accurate records.

Beyond its statutory obligations to an "individual" driver, the BMV owes Kelly a common-law duty to maintain accurate records. In *Webb v. Jarvis*, this Court articulated a three-part balancing test for determining whether a common-law duty exists. 575 N.E.2d 992, 995 (Ind. 1991). Those three factors are "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.* Considering the relationship between the parties, the BMV is required to maintain driving records of "individual[s]" like Kelly and is in the sole position of correcting these records. *See* I.C. § 9-14-12-3(a). It is also reasonably foreseeable that maintaining inaccurate driving records will be harmful, leading to improper detentions and lost job opportunities. *See, e.g.*, *Ind. Bureau of Motor Vehicles v. McClung*, 138 N.E.3d 303, 308 (Ind. Ct. App. 2019) (observing how driver's license suspensions put "great strain on affected individuals and on state resources"). And it is important public policy for individuals to have a remedy when an agency like the BMV is negligent.

This Court has also held that governmental entities owe common-law duties to use ordinary and reasonable care. *See Benton v. City of Oakland City*, 721 N.E.2d 224, 232–33 (Ind. 1999). The general exceptions to this rule are (1) prevention of crime, (2) appointment of competent officials, and (3) making correct judicial decisions. *Id.* at 230. Because the BMV's failure to maintain accurate records does not involve any of these duties, the BMV owed Kelly a duty to exercise ordinary and reasonable care. And because the duty of care

is so pervasive, any additional exceptions would be rare and need to be identified on a case-by-case basis. *Id.* Considering Kelly's allegations that the BMV failed to correct his driver's record after multiple complaints, Kelly has alleged enough facts to establish that the BMV's actions were unreasonable, supporting a common-law negligence claim under the notice-pleading standard.

Kelly also has a negligence-per-se-claim. Negligence per se "assumes the existence of a common-law duty of reasonable care, and the court is asked to adopt the standard of conduct set forth in a statute or ordinance (often a criminal or regulatory provision) as the standard of conduct required under that preexisting duty, so that a violation of the statute or ordinance serves to satisfy the breach element of a negligence action." *Stachowski v. Estate of Radman*, 95 N.E.3d 542, 544 (Ind. Ct. App. 2018) (emphasis omitted). As discussed above, the BMV has a common-law duty to maintain accurate records. The statutes outlining the BMV's duties then define the standard of care. I.C. § 9-14-12-3(a) (for each "individual" licensed by the BMV, the BMV "shall create and maintain a driving record"). By failing to maintain an accurate record, the BMV breached its duty of reasonable care. Therefore, Kelly alleged enough facts for a negligence-per-se claim. Although Kelly did not assert negligence per se in his complaint, he did assert negligence and cited the statute establishing the BMV's duties. *See* App. Vol. 2, p. 9. And under the notice-pleading standard, this is sufficient to put the BMV on notice that Kelly could argue negligence per se. *See NFI Interactive Logistics, LLC v. Bruski*, 239 N.E.3d 63, 69 (Ind. Ct. App. 2024) (concluding that, although it may be "highly desirable" for the plaintiff to include a statement of the specific theory of liability, the plaintiff is not required to do so) (internal citation and quotation marks omitted).

## Conclusion

Despite repeated requests, the BMV failed to correct the error in Kelly's driving record. This failure foreseeably caused Kelly harm, including a lost job opportunity. At this early stage, Kelly has alleged sufficient facts for his negligence case to proceed.